

GABRIEL P. HARVIS
BAREE N. FETT

October 12, 2016

<u>BY ECF</u>
Honorable Marilyn D. Go
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11211

    Re:   *Cordero v. City of New York, et al.*, 15 CV 3436 (JBW) (MDG)

Your Honor:

    I represent plaintiff in the above-referenced civil rights action. I write pursuant to Fed. R. Civ. P. 30(d)(2) to respectfully request an order awarding plaintiff costs in connection with improper objections raised by defense counsel at the deposition of defendant John Essig on September 22, 2016. The deposition transcript is attached as Exhibit 1 and the referenced video footage, Exhibit 2, is being filed with the Clerk pursuant to the Court's Individual Practices.

*Suggestive and Inappropriate Objections*

    From the beginning of the examination, questioning was frustrated by defense counsel's speaking objections. *See* Transcript of Essig Deposition ("Essig Depo. Tr."), annexed hereto as Exhibit 1, p. 33, ln. 21-p. 34, ln. 12; p. 37, ln. 15-19; p. 39, ln. 16-23; p. 41, ln. 12-18; p. 46, ln. 12-24; p. 47, ln. 8-19; p. 52, ln. 9-p. 53, ln. 11; p. 60, ln. 25-p. 62, ln. 25; p. 71, ln. 2-p. 71, ln. 21.[1] Following defense counsel's lead, the witness became nonresponsive to the point that his deposition was futile. *Id.* at p. 76, ln. 7-p. 83, ln. 17.[2] The undersigned was compelled to call the Court when defense counsel instructed her client not to answer the question "what do you remember that happened on [the date of the incident]?" *Id.* at p. 83, ln. 18-24.[3]

---

[1] Video of this portion of the questioning can be accessed at Exhibit 2, "Footnote 1.mov."
[2] Video of this portion of the questioning can be accessed at Exhibit 2, "Footnote 2.mov."
[3] Video of this portion of the questioning can be accessed at Exhibit 2, "Footnote 3.mov."

Honorable Marilyn D. Go
Oct. 12, 2016

On the call, defense counsel misstated the prior proceedings in argument before the Court's law clerk. *Id.* at p. 86, ln. 14-18 ("Most of the questions have been leading. They have been completely confusing, ambiguous and it would be impossible for anyone to adequately answer these questions."). In defiance of the record, defense counsel even denied to the Court's law clerk having directed the witness not to answer moments earlier:

> LAW CLERK: Ms. Booth, you can object as to the form of the question.
>
> MS. BOOTH: Yes, and I have.
>
> LAW CLERK: You can't direct the witness not to answer.
>
> MS. BOOTH: I did not direct him not to answer. When I directed him not to answer was a question that was repeatedly asked, which was, what was your first thought of the day? And that was the actual question. What Mr. Harvis just stated was not the last question and the court reporter is here, obviously can read it back. What he said, what was your first memory of the day.[4]

*Id.* at p. 87, ln. 6-22.

When questioning resumed, defense counsel's objections became more aggressive, despite the guidance received during the call – Ms. Booth incessantly interrupted the examiner to declare that questions called for speculation, were vague, leading or had been asked and answered. *See, e.g., id.* at p. 94, ln. 4-8, 12-22; p. 95, ln. 10-p. 96, ln. 3; p. 98, ln. 6-p. 100, ln. 21; p. 103, ln. 9-20; p. 106, ln. 19-23; p. 112, ln. 3-10; p. 126, ln. 24-p. 127, ln. 7; p. 131, ln. 22-p. 132, ln. 2; p. 134, ln. 3-p. 134, ln. 9; p. 136, ln. 4-p. 136, ln. 20; p. 137, ln. 17-21; p. 138, ln. 18-p. 139, ln. 4; p. 140, ln. 3-9; p. 147, ln. 2-7; p. 149, ln. 13-17; p. 153, ln. 19-25; p. 155, ln. 17-22; p. 156, ln. 14-19; p. 158, ln. 19-p. 159, ln. 2; p. 159, ln. 14-p. 160, ln. 13; p. 163, ln. 25-p. 164, ln. 6; p. 164, ln. 11-15, 20-24; p. 167, ln. 14-20; p. 169, ln. 7-12; p. 171, ln. 21-24; p. 173, ln. 5-11; p. 174, ln. 5-10, 12-18; p. 175, ln. 13-18; p. 178, ln. 9-24; p. 184, ln. 8-p. 185, ln. 5; p. 185, ln. 15-p. 187, ln. 7; p. 198, ln. 24-p. 199, ln. 4; p. 199, ln. 17-p. 199, ln. 25; p. 202, ln. 15-p. 203, ln. 12; p. 204, ln. 7-13; p. 205, ln. 24-p. 206. Ln. 6; p. 215, ln. 19-p. 219, ln. 2; p. 223, ln. 7-p. 224, ln. 4; p. 224, ln. 20-p. 225, ln. 3; p. 227, ln. 24-p. 228, ln. 13; p. 229, ln. 12-21; p. 237, ln. 19-25; p. 240, ln. 25-p. 241, ln. 8; p. 241, ln. 22-p. 242, ln. 4; p. 242, ln. 11-16; p. 243, ln. 5-

---

[4] Video of the line of questioning that preceded Ms. Booth's direction that the witness not answer is available at Exhibit 2, "Footnote 4.mov."

Honorable Marilyn D. Go
Oct. 12, 2016

9; p. 244, ln. 14-p. 245, ln. 4; p. 246, ln. 13-p. 247, ln. 5; p. 248, ln. 8-p. 249, ln. 6.[5] Again, Ms. Booth's interruptions thwarted good faith inquiry regarding the disputed events, requiring the undersigned to call the Court:

> Q:  Do you remember seeing Hector Cordero in the cell, at any point?
>
> A:  Yeah, when the officer was searching him.
>
> Q:  But you don't know whether or not he had his clothes on?
>
> A:  I don't.
>
> MS. BOOTH: Objection.
>
> A:  I don't recall.
>
> Q: [D]id you then leave the room that the cells are in at that point?
>
> A:  I don't recall.
>
> Q:  Well, what's the next thing that you recall?
>
> MS. BOOTH: Objection.
>
> A:  As far as what?
>
> Q:  As far as that tour, after you finished making sure that Rubin was secure while he was searching Hector Cordero?
>
> MS. BOOTH: Anything after his involvement with the plaintiff ended, is beyond the scope of this deposition.
>
> MR. HARVIS: Let's agree to disagree about that.
>
> MS. BOOTH: I'm going to direct him not to answer.
>
> MR. HARVIS: Let's call the court.
>
> MS. BOOTH: Then call them.

---

[5] Video of this portion of the questioning can be accessed at Exhibit 2, "Footnote 5.mov."

Honorable Marilyn D. Go
Oct. 12, 2016

*Id.* at p. 249, ln. 21-p. 251, ln. 3.[6]

With the Court engaged in a settlement conference, the undersigned struggled in the face of a continuing barrage of speaking objections of escalating volume and rancor. Defense counsel repeatedly instructed the witness not to answer basic questions and threatened to leave. *See id.* at p. 252, ln. 8-p. 256, ln. 18 (directing not to answer); p. 261, ln. 22-p. 267, ln. 16 (directing not to answer); p. 267, ln. 22-p. 268, ln. 3; p. 269, ln. 9-p. 271, ln. 7; p. 272, ln. 21-p. 273, ln. 11; p. 274, ln. 10-p. 275, ln. 13; p. 277, ln. 3-p. 277, ln. 9; p. 278, ln. 12-p. 280, ln. 4 (threatening to leave); p. 283, ln. 10-24; p. 285, ln. 18-24; p. 285, ln. 25-p. 286, ln. 9; p. 286, ln. 24-p. 287, ln. 5; p. 287, ln. 16-23; p. 288, ln. 15-p. 290, ln. 12; (threatening to leave); p. 292, ln. 20-p. 293, ln. 5; p. 294, ln. 2-11; p. 295, ln. 6-18.[7]

When the undersigned asked the witness whether specific memo book entries were required during SNEU operations, Ms. Booth directed her client not to answer and ground the questioning to a halt. *Id.* at p. 295, ln. 19-p. 297, ln. 12.[8] The objections prevented a fair examination of the witness. *See id.* at p. 299, ln. 3-8; p. 301, ln. 12-25; p. 303, ln. 14-p. 305, ln. 3 (directing not to answer); p. 305, ln. 22-p. 306, ln. 9; p. 307, ln. 4-p. 312, ln. 18 (multiple directions not to answer and threats to leave); p. 319, ln. 9-13.[9]

When the undersigned stated on the record that the officer had failed to bring his original memo book despite a Rule 34 request, the proceedings were needlessly interrupted yet again. Ms. Booth demanded to call the Court and proceeded to make a series of false allegations regarding the questioning. *Id.* at p. 320, ln. 4-p. 338, ln. 20 ("[A]ll of the questions have now been asked and answered and they're harassing…Your honor, there have been questions throughout this process that have been repeated 3, 4, 5 possibly even 10 times, the same question.").

By the time questioning resumed, Ms. Booth and her witness had rendered the environment so toxic that the deposition could not be salvaged. The speaking objections from defense counsel continued. *See* p. 339, ln. 8-14; p. 350, ln. 24-p. 351, ln. 5; p. 353, ln. 9-19; p. 357, ln. 25-p. 358, ln. 16 (directing not to answer); p. 361, ln. 20-p. 362, ln. 2; p. 362, ln. 22-p. 363, ln. 11; p. 367, ln. 12-15; p. 368, ln. 3-12;

---

[6] Video of this portion of the questioning can be accessed at Exhibit 2, "Footnote 6.mov."
[7] Video of this portion of the questioning can be accessed at Exhibit 2, "Footnote 7.mov."
[8] Video of this portion of the questioning can be accessed at Exhibit 2, "Footnote 8.mov."
[9] Video of this portion of the questioning can be accessed at Exhibit 2, "Footnote 9.mov."

Honorable Marilyn D. Go
Oct. 12, 2016

p. 372, ln. 25-p. 373, ln. 11; p. 375, ln. 8-16 (directing not to answer); p. 378, ln. 19-24; p. 379, ln. 16-20; p. 383, ln. 13-19; p. 379, ln. 16-20; p. 383, ln. 13-19; p. 389, ln. 22-p. 394, ln. 11 (directing not to answer).[10]

  In total, over 750 statements from Ms. Booth appear in the record, including over 600 objections across 83% of the examination's pages. *See* Adobe Acrobat Report, annexed hereto as Exhibit 3. Plaintiff respectfully submits that both defense counsel and the witness prevented a fair examination and that an award of costs is appropriate. *See* Fed. R. Civ. P. 30(d)(2) (authorizing sanctions against any person who "impedes, delays, or frustrates the fair examination of the deponent").

  Thank you for your consideration of this request.

                Respectfully submitted,

                Gabriel P. Harvis

Encl.

cc: Amatullah Booth, Esq.

---

[10] Video of this portion of the questioning can be accessed at Exhibit 2, "Footnote 10.mov."