15-CV-3436 (JBW)(CLP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HECTOR CORDERO,

                                       Plaintiff,

-against-

CITY OF NEW YORK; Police Officer HUGO HUGASIAN, Shield No. 10228; Lieutenant CHRISTOPHER MORAN, Police Officer PAUL PALMINTERI, Shield No. 18460; Police Officer MARCO ARTALE, Shield No. 25158; Police Officer PETER RUBIN, Shield No. 00934; Police Officer JOHN ESSIG, Shield No. 08667; Police Officer LYNETTE REYES, Shield No. 26626; Police Officer RAUL NAREA, shield No. 07493; JOHN and JANE DOE 1 through 10, individually and in their official capacities (the names John and Jane Doe being fictitious, as the true names are presently unknown),

                                       Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
    *Attorney for Defendants City of New York,*
    *Hugo Hugasian, Christopher Moran, Peter*
    *Rubin and John Essig*
    *100 Church Street*
    *New York, New York 10007*

    *Of Counsel: Amatullah Booth*
    *Tel: (212) 356-3534*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT

    POINT I

        ALL THE FACTS IN DEFENDANTS' 56.1 STATEMENT SHOULD BE DEEMED ADMITTED ................................................................................................. 2

    POINT II

        PLAINTIFF'S VERSION OF EVENTS, LABELLED AS "STATEMENT OF FACTS," IS A DISTRACTION THAT IS NOT RELEVANT TO DEFENDANTS' MOTION ON THE *UNDISPUTED* FACTS ................................................................................................. 4

    POINT III

        PLAINTIFF'S UNLAWFUL STOP AND FALSE ARREST CLAIMS MUST BE DISMISSED AGAINST RUBIN AND ESSIG BECAUSE THEY RELIED ON INFORMATION PROVIDED BY THE OBSERVATION OFFICER, OFFICER HUGASIAN ................................................................................................. 5

    POINT IV

        PLAINTIFF TESTIFIED THAT ESSIG DID NOT SEARCH HIM AND THERE IS NO EVIDENCE IN THE RECORD THAT ESSIG KNEW OF AN ALLEGED UNLAWFUL SEARCH AND THEREFORE COULD NOT HAVE INTERVENED ................................................................................................. 6

**Page**

POINT V

    PLAINTIFF CANNOT ESTABLISH A CLAIM AGAINST THE CITY OF NEW YORK ..................................................7

POINT VI

    MORAN MUST BE DISMISSED BECAUSE THERE IS NO EVIDENCE TO SUPPORT A SUPERVISORY LIABILITY CLAIM........................................................9

CONCLUSION............................................................................................ 10

**Page**

# TABLE OF AUTHORITIES

**CASES**

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) .................................................................................................... 9

City of Canton v. Harris,
    489 U.S. 378 (1989) .................................................................................................... 8

Colon v. Coughlin,
    58 F.3d 865 (2d Cir. 1995) .......................................................................................... 7

Loria v. Gorman,
    306 F.3d 1271, 1288 (2d Cir. 2002) ............................................................................ 6

Monell v. Department of Social Servs.,
    436 U.S. 658 (1978) ................................................................................................ 7, 8

Provost v. City of Newburgh,
    262 F.3d 146 (2d Cir. 2001) ........................................................................................ 9

Sanabria v. Tezlof,
    11-CV-6578 (NSR),
    2016 U.S. Dist. LEXIS 107104 (S.D.N.Y. Aug. 12, 2016) ......................................... 7

Smith v. Tobon,
    529 Fed. Appx. 36, 39 (2d Cir. July 8, 2013) .............................................................. 6

Townes v. City of New York,
    176 F.3d 145 (2d. Cir. 1999) ....................................................................................... 6

**Statutes**

Fed. R. Civ. P. 56 ................................................................................................................ 2

NY Penal Code, 220.34 ...................................................................................................... 3

**Page**

## **PRELIMINARY STATEMENT**

Defendants moved for partial summary judgment, acknowledging disputes of fact where they exist. Defendants submit that Plaintiff was observed by Officer Hugasian selling drugs to Matthew Ninos outside a bodega. Plaintiff was then observed walking back inside the bodega where he worked. Plaintiff claims that he never left the bodega and therefore could not have engaged in a drug transaction, even though it is undisputed that Plaintiff had almost $600 in cash on his person at the time of his arrest, consisting of mixed small bills. Plaintiff also failed to preserve the video evidence taken on surveillance video cameras located inside the bodega where he operated as a manager, which could have corroborated that he never left the store to sell drugs. It is undisputed that Mr. Ninos, the buyer of the crack cocaine, was arrested moments after the drug sale, on the same block where the bodega is located, with the drugs in his possession. Mr. Ninos subsequently pled guilty to possessing those drugs.

Notwithstanding the overwhelming amount of the evidence that supports Officer Hugasian, Defendants did not move with respect to claims against Officer Hugasian as a result of the disputed fact concerning Plaintiff's claim of innocence. Similarly, Defendants did not move for summary judgment concerning Plaintiff's alleged strip-search claim against Officer Rubin, as this too is disputed by Plaintiff, as he claims that while he was at the precinct he was asked to strip naked. Officer Rubin denies these allegations. Nevertheless, Defendants make reference to the above, in response to Plaintiff's allegations in his motion that Defendants are somehow mistreating the record. The distortion and the destruction of evidence, lies solely with the Plaintiff.[1]

---

[1] Defendants' motion was filed one day late and a corresponding extension of one day was granted to plaintiff for the purposes of filing his motion in opposition. Consequently, Plaintiff suffered no prejudice and his request to deny Defendants motion pursuant to this ground is tenuous, as are the remainder of Plaintiff's arguments.

**ARGUMENT
POINT I
ALL THE FACTS IN DEFENDANTS' 56.1 STATEMENT SHOULD BE
DEEMED ADMITTED**

Plaintiff's responses to Defendants' 56.1 statement fail to controvert the undisputed facts set forth by Defendants. Instead, Plaintiff (1) adds non-responsive facts to color his claims, (2) refers to inadmissible evidence, and (3) contains opinion and speculation of Plaintiff's Counsel. With respect to Pl.'s Rule 56.1 Resp. at ¶¶ 5, 6, 10 – 12, Plaintiff fails to dispute that: The defendant officers were engaged in a drug enforcement operation in the vicinity of J&C Mini Mart, a bodega located in a drug prone location where the Plaintiff worked on the date in question; Officer Hugasian observed the buyer approach the bodega with a cell phone and money in his hands; observed the Plaintiff leave the bodega and meet the buyer outside; the buyer handed Plaintiff a sum of money; and observed Plaintiff hand what appeared to be two ziplock bags of narcotics, in exchange for the money. Plaintiff fails to reference *any* evidence in support of his denials, but rather makes multiple blanket denials that are either non-responsive to Defendants' statements, and/or consist of Plaintiff's Counsel's insertion of his opinions and baseless speculation, in an attempt to deny Defendants' statements.

In Pl.'s Rule 56.1 Resp. at 13, Plaintiff's Counsel claims that no drug sale occurred because there was a small quantity of drugs recovered from the buyer. Notably, Mr. Harvis *admits* that drugs were in fact sold, but claims that the *amount* of drugs that were sold did not consist of "transactional weight," and inserts his opinion, classifying the amount of the drugs recovered as a *residue* amount. Notably, the NYPD complaint report, NYPD voucher for the crack cocaine recovered from the buyer, the DA screening sheet, Plaintiff's criminal court complaint, and the lab report for the drugs, all of which Plaintiff has annexed as exhibits to the Declaration of Gabriel P. Harvis (hereinafter referred to as "Pl's Decl."), are absent any

reference to a "residue" amount of drugs recovered. See Pl's Decl. Exhibits 11, 14, 15, 22, 31. Furthermore, the amount of drugs sold during a drug transaction is irrelevant, as it relates to probable cause for Plaintiff's arrest, for the crime of criminal sale of a controlled substance. See NY Penal Code, 220.34.

In Pl.'s Rule 56.1 Resp. at 14, Plaintiff again fails to sufficiently deny that the drugs that were packaged in plastic bags were recovered from the buyer, Mr. Ninos. In an effort to confuse the Court, Plaintiff denied Defendants' statement and referred the Court to a portion of Lt. Moran's testimony, wherein Lt. Moran described the appearance of an object depicted in a photograph taken by Plaintiff's Counsel. The photo taken by Plaintiff's Counsel consisted of a portion of the drugs recovered from the buyer that was taken by Plaintiff's Counsel *after* the drugs were sent to the lab, removed from their *original* packaging, processed, and tested by the lab technician. Plaintiff further attempts to confuse the Court by denying the radio transmission from Officer Hugasian, informing the officers of the drug sale between the Plaintiff and the buyer. Plaintiff's Counsel referenced a section of Officer Rubin's deposition testimony that does in fact *specifically* state that the communication he received concerning the Plaintiff's drug transaction was communicated by Officer Hugasian. See Pl.'s Rule 56.1 Resp. at 16, and Pl's Decl. Exhibit 8 at 130:1-5, 134:8-12.

Moreover, in Pl.'s Rule 56.1 Resp. at 27-29, Plaintiff attempts to deny that Essig did not conduct the search of Plaintiff, nor did he have any knowledge that Plaintiff's search was unconstitutional. Notwithstanding the overwhelming amount of evidence that that exist to support Defendants' statements, including corroborating testimony from both Plaintiff and Essig confirming that Essig was not in the cell during Plaintiff's search, and that he did not search Plaintiff, Plaintiff continues to attempt to deny Defendants' statement in an attempt to create a

reasonable opportunity for Essig to intervene, which simply did not exist. See Exhibit E of Defendants' Declaration of Amatullah Booth, filed with Defendants' Motion for Summary Judgment (hereinafter referred to as "Defs' Decl.") at 234:16 – 235:9, Exhibit G of Defs' Decl. at 131:3 – 7, and Exhibit H at 63:4 – 7.

Lastly, Plaintiff attempts to dispute that Lt. Moran was not present for Plaintiff's arrest and search, and that he did not approve a strip search of Plaintiff, in Pl.'s Rule 56.1 Resp. at 34-39, by merely inserting pure speculation. Here, Plaintiff also fails to reference any evidence to support his dispute of these facts.

As a result of the foregoing, Defendants respectfully request that each paragraph in Pl.'s Rule 56.1 Resp., be deem to be in violation of Local Rule 56.1, and therefore deemed admitted.

## POINT II
## PLAINTIFF'S VERSION OF EVENTS, LABELLED AS "STATEMENT OF FACTS," IS A DISTRACTION THAT IS NOT RELEVANT TO DEFENDANTS' MOTION ON THE *UNDISPUTED* FACTS

Plaintiff includes supplemental statements in his 56.1 Response, simply to color his claims, but fails to in any way defeat Defendants' motion. Plaintiff acknowledges that all of these statements are *disputed* by Defendants, therefore making them irrelevant. See Pl.'s Rule 56.1 Resp. at 41-50. Plaintiff adds statements that he claims amount to an illegal interrogation. See Pl.'s Rule 56.1 Resp. at 41-43. The officers deny these statements and they are an attempt by Plaintiff to corroborate his tenuous claims. Plaintiff also made various statements about Lieutenant Moran's involvement in the incident that are all speculative and absent any reference to supporting evidence. Plaintiff states that Lt. Moran was on the scene for Plaintiff's arrest and approved the arrest while *on the scene*. See Pl.'s Rule 56.1 Resp. at 44-45. The cited testimony show that Lt. Moran was on the scene at some point, but was not present for Plaintiff's arrest, nor did he approve the arrest on the scene. Plaintiff also states that Lt. Moran authorized

4

Plaintiff's alleged strip search and cites to a NYPD Patrol Guide section concerning strip searches, which does not amount to sufficient evidence supporting Plaintiff's assertion that Lt. Moran approved a strip search of the Plaintiff on the date in question. See Pl.'s Rule 56.1 Resp. at 48.  Similarly, Plaintiff makes blanket claims that Officer Essig and Officer Hugasian falsified their overtime paperwork on the date in question. See Pl.'s Rule 56.1 Resp. at 49-50. Plaintiff's citations merely reference their overtime paperwork and testimony from Essig, none of which support overtime abuse, but rather support the fact that Hugasian and Essig did *not* falsify their overtime. Plaintiff raises this overtime allegation simply in an attempt to distract the Court.

Accordingly, Defendants respectfully request that each paragraph in their 56.1 Statement be deemed admitted.[2]

## POINT III
## PLAINTIFF'S UNLAWFUL STOP AND FALSE ARREST CLAIMS MUST BE DISMISSED AGAINST RUBIN AND ESSIG BECAUSE THEY RELIED ON INFORMATION PROVIDED BY THE OBSERVATION OFFICER, OFFICER HUGASIAN

Plaintiff fails to address any of the Second Circuit case law provided by Defendants, which makes it clear that Essig and Rubin must be dismissed from the case for relying on the statements of a fellow officer. Even if Plaintiff is correct, that Officer Hugasian's statements to Essig and Rubin were false, that does not prevent dismissal of the claims against them because their reliance on a fellow officer was reasonable. Plaintiff attempts to argue that the officers should have looked at surveillance[3] and interviewed witnesses to establish probable cause to arrest. However, here the officers relied on contemporaneous observations and descriptions provided by Officer Hugasian, prior to arresting the Plaintiff. "[A]bsent *significant indications* to

---

[2] Plaintiff also includes his version of events in his memorandum in opposition. Plaintiff's version is inserted to color his claims, but does nothing to overcome Defendants' motion.

[3] Ironically, this is the same surveillance video that Plaintiff did not look at after the incident and failed to preserve.

5

the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful." Loria v. Gorman, 306 F.3d 1271, 1288 (2d Cir. 2002) (emphasis added). Here, Essig and Rubin physically arrested Plaintiff because Officer Hugasian observed Plaintiff sell drugs. Plaintiff's failure to address the cases concerning Essig and Rubin's reliance on Officer Hugasian is telling. Additionally, the insertion of Plaintiff's self-serving statement concerning an alleged interrogation, are misplaced and wholly irrelevant. According to Plaintiff, while in the police car he was questioned *"by the officers and contends that at the time, he professed his innocence and heard Officer Essig admit that probable cause was lacking."* First, there is absolutely no evidence to support this allegation but for Plaintiff's self-serving assertion. Moreover, Plaintiff's self-serving general denial that Plaintiff did not engage in a hand-to-hand should be rejected by this Court as the Second Circuit did in Smith v. Tobon, 529 Fed. Appx. 36, 39 (2d Cir. July 8, 2013) ("The fact that Smith told police that he had not participated in a drug sale does not suffice.").

Second, this claim of a Miranda violation is first raised in Plaintiff's opposition to Defendants' motion for summary judgment and is irrelevant, since a civil rights claim does not exist for an alleged Miranda violation. See Townes v. City of New York, 176 F.3d 145 (2d. Cir. 1999); (The fruit of the poisonous tree doctrine is "inapplicable to civil § 1983 actions)."

Therefore, the unlawful stop and false arrest claims must be dismissed against Officers Rubin and Essig.

### POINT IV
### PLAINTIFF TESTIFIED THAT ESSIG DID NOT SEARCH HIM AND THERE IS NO EVIDENCE IN THE RECORD THAT ESSIG KNEW OF AN ALLEGED UNLAWFUL SEARCH AND THEREFORE COULD NOT HAVE INTERVENED

Plaintiff asserts a failure to intervene claim against Officer Essig, related to Plaintiff's unlawful strip-search claim, but fails to proffer *any* evidence in support of this claim. Indeed,

6

Plaintiff concedes that Officer Essig did not perform the search of Plaintiff, and further admits during his very own deposition testimony, that Officer Essig was not even in the room while his search was performed. See Exhibit G of Defs' Decl. at 131:3 – 7 and Exhibit H at 63:4 – 7. Consequently, Officer Essig would have had *no* knowledge that the search was unconstitutional, and likewise, he would have had no reasonable opportunity to intervene. "Where the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable." Sanabria v. Tezlof, 11-CV-6578 (NSR), 2016 U.S. Dist. LEXIS 107104, at *17 (S.D.N.Y. Aug. 12, 2016) (citation omitted).

Plaintiff however, fails to adequately dispute the above, and resorts to pure speculation, stating that "A jury may somehow find that Officer Essig did observe Plaintiff's search." Without any evidentiary support, Plaintiff's claim cannot survive summary judgment. Accordingly, the strip-search claim and failure to intervene claim against Officer Essig should be dismissed.[4]

## POINT V
## PLAINTIFF CANNOT ESTABLISH A CLAIM AGAINST THE CITY OF NEW YORK

Plaintiff's Monell claim fails because he cannot cite to any evidence that suggests that the City played a role in Plaintiff's arrest. In support of this claim, Plaintiff refers the Court to Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995), simply because in that case the Circuit upheld an award against the City for a Monell claim. Plaintiff's citations do not support the claims here. If it did, any plaintiff could cite to a decision from more than 20 years ago, to support a claim against the City. Plaintiff then cites to the Walker case, a case where Plaintiff's Monell claim was permitted to proceed at the *motion to dismiss* phase of the action. Plaintiff cites to Walker

---

[4] Officer Essig should be dismissed as a defendant.

7

for the deliberative indifference standard and then likens it to this case, without any citations to evidence. Allegations of unlawful practices with no evidentiary support are not enough to establish Monell liability. This is nothing more than a hail mary attempt by Plaintiff to keep the City of New York in this case, when this matter boils down to a he-said, she-said dispute of "I saw Plaintiff selling drugs" verses "It was not me."

Likewise, Plaintiff cannot demonstrate that an unwritten "quota" policy caused, or was the moving force behind his arrest and prosecution. See City of Canton, 489 U.S. at 389 (citing Monell, 436 U.S. at 694) (plaintiff must demonstrate that the municipality made a deliberate choice, implemented through this "policy" or "custom" that acted as "the moving force [behind] the constitutional violation"). Plaintiff has no evidence to suggest that he was arrested for any reason other than for his involvement in a drug sale with the buyer. Plaintiff's argument that Officer Hugasian received overtime on the date in question, and even more tenuous, Plaintiff's argument that this somehow demonstrates a quota custom, is severely undercut by the buyer's possession of crack cocaine, and his subsequent guilty plea, wherein he admitted to possessing crack cocaine at the approximate time and place of the Plaintiff's drug sale transaction. See Exhibit F of Defs' Decl. Plaintiff's claim is illogical and meritless.

Accordingly, the claim against the City of New York should be dismissed because Plaintiff has provided no evidence in support of this claim, nor has Plaintiff produced any evidence to suggest that the City was the "moving force" behind Plaintiff's arrest and prosecution.

# POINT VI
## MORAN MUST BE DISMISSED BECAUSE THERE IS NO EVIDENCE TO SUPPORT A SUPERVISORY LIABILITY CLAIM[5]

As stated in defendants' original moving papers, supervisory liability requires personal involvement in the alleged misconduct. See Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.). "Direct participation" means "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." Provost, 262 F.3d at 155.

Here, Lt. Moran did not personally observe the Plaintiff engaged in the drug sale, nor was he present for Plaintiff's arrest. See Exhibit B of Defs' Decl. Indeed, while Lt. Moran did observe the Plaintiff at the precinct waiting to be placed into the holding cell, the record is clear that he did not actually witness the Plaintiff enter the cell, nor did he observe any subsequent search of the Plaintiff or authorize a strip search of the Plaintiff. See Exhibit B of Defs' Decl. Consequently, Lt. Moran was not *personally* involved in Plaintiff's arrest or the alleged search.

Notably, Plaintiff concedes these facts, and acknowledges that there is no evidence to support Plaintiff's *un*-plead claim for supervisory liability. Despite this, Plaintiff insists that a jury could somehow make the assumption that Lt. Moran was somehow personally involved, *without* the existence of any supporting evidence. Plaintiff fails to come forward with evidence to survive summary judgment. Accordingly, Lt. Moran should be dismissed from this action with prejudice.

---

[5] The claim of supervisory liability was not plead in Plaintiff's complaint and for this reason, should also be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants City of New York, Hugo Hugasian, Christopher Moran, Peter Rubin and John Essig respectfully request that the Court grant partial summary judgment and dismiss the claims against defendants City of New York, Christopher Moran and John Essig in their entirety, and dismiss certain claims against defendant Peter Rubin, together with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
September 5, 2017

        ZACHARY W. CARTER
        Corporation Counsel for the City of New York
        *Attorney for Defendants City of New York, Hugo Hugasian, Christopher Moran, Peter Rubin and John Essig*
        100 Church Street
        New York, New York 10007

By:         /s/
        AMATULLAH BOOTH

15-CV-3436 (JBW)(CLP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HECTOR CORDERO,

                                                  Plaintiff,

-against-

CITY OF NEW YORK; Police Officer HUGO HUGASIAN, Shield No. 10228; Lieutenant CHRISTOPHER MORAN, Police Officer PAUL PALMINTERI, Shield No. 18460; Police Officer MARCO ARTALE, Shield No. 25158; Police Officer PETER RUBIN, Shield No. 00934; Police Officer JOHN ESSIG, Shield No. 08667; Police Officer LYNETTE REYES, Shield No. 26626; Police Officer RAUL NAREA, shield No. 07493; JOHN and JANE DOE 1 through 10, individually and in their official capacities (the names John and Jane Doe being fictitious, as the true names are presently unknown),

                                                  Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, New York 10007*

*Of Counsel: Amatullah Booth*
*Tel: (212) 356-3534*

*Due and timely service is hereby admitted.*

*New York, New York  ........................................, 2017.*

*........................................................................, Esq.*

*Attorney for ......................................................................*