UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HECTOR CORDERO,

                   Plaintiff,

         - against -

CITY OF NEW YORK, et al.,

                 Defendants.
------------------------------------------------------------X

**ORDER**
15 CV 3436 (JBW) (CLP)

**POLLAK**, United States Magistrate Judge:

On June 12, 2015, Hector Cordero ("plaintiff") commenced this action, pursuant to 42

U.S.C. §§ 1983 and 1988, against defendants the City of New York and John and Jane Doe 1

through 10, individually and in their official capacities, alleging violations of his Fourth, Fifth,

Sixth, and Fourteenth Amendment rights.  On November 30, 2015, plaintiff filed an Amended

Complaint, adding as defendants Lieutenant Christopher Moran and Police Officers Hugo

Hugasian, Paul Palminteri, Raul Narea, John Essig, Lynette Reyes, Peter Rubin, and Marco

Artale, and John and Jane Doe 1 through 10, individually and in their official capacities

(collectively, "defendants").[1]

After almost two years of exchanging discovery, this Court certified that discovery was

complete[2] on May 19, 2017, and set a briefing schedule for the City's anticipated motion for

summary judgment.

---

[1]On August 2, 2017, the Court dismissed the claims against Paul Palminteri, Marco
Artale, Lynette Reyes, and Raul Narea with prejudice.

[2]The Court's Minute Entry of May 19, 2017 reads: "discovery complete with the
exception of Essig deposition [2 hour limit] and if non-party can be located."  Officer Essig's
deposition was taken on June 14, 2017.

On October 17, 2017, the Honorable Jack Weinstein issued an Order addressing the

City's motion for summary judgment ("Order")[3]. The Court Ordered:

> In the present case the court will allow the plaintiff to proceed
> against the City of New York on *Monell* grounds that allege the
> failure to take reasonable steps to control lying by policy officers is
> a policy of the NYPD. *See Monell v. Department of Social
> Services,* 436 U.S. 658 (1978). His theory is that the police
> department has long been aware of a wide-spread practice of false
> arrests at the end of tours of duty in order to obtain overtime and
> that it has failed to sufficiently address this practice. Plaintiff
> argues that the city's policy is not to track or adequately discipline
> policemen for testifying falsely. And that it has failed to supervise
> or properly discipline police officers with a record of being
> unsuccessful defendants in Title 42 U.S. Code Section 1983 cases
> because they fabricated evidence.

(Id. at 4). The Court found that "there is sufficient evidence for plaintiff to proceed on the

grounds that: (1) New York city's overtime policy incentivizes officers to make false arrests; and

(2) police malfeasance in general and as related to the overtime policy is inadequately monitored

to prevent abuse." (Id. at 20).

Accordingly, the Court ordered a bifurcated trial. (Id. at 5). The first phase (Phase I) will

proceed against the officer defendants, and will include the claims of (1) false arrest against

Officer Hugasian; (2) malicious prosecution against Officer Hugasian; (3) denial of a right to a

fair trial against Officer Hugasian; (4) unlawful strip search against Officer Rubin; (5) failure to

intervene by Officer Essig in the alleged strip search of plaintiff; and (6) supervisory liability

against Lieutenant Moran. (Id. at 6).

The second phase (Phase II), plaintiff's Monell claims against the City of New York, will

only proceed if the jury finds against the individual defendants in the first phase. (Id.) Trial for

---

[3]Citations to "Order" refer to the Memorandum and Order, dated October 17, 2017.

2

Phase I will commence on February 20, 2018, with Phase II, if applicable, to be scheduled thereafter.[4]

Presently before this Court is plaintiff's request to re-open discovery.  Plaintiff requests leave of the Court to obtain additional discovery with respect to Phase I, and to take Monell discovery in advance of Phase II of the upcoming trial.  (Pl.'s Mot.[5] at 1).


I. Legal Standard

The party seeking to re-open discovery bears the burden of establishing good cause. Spencer v. International Shoppes, Inc., No. 06 CV 2637, 2011 WL 3625582, at *1 (E.D.N.Y. Aug. 16, 2011) (citing Trebor Sportswear Co. v. Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989)).  "The Second Circuit has held that the trial court 'may properly deny further discovery' where there has been 'a fully adequate opportunity for discovery' and may consider whether additional discovery would produce dispositive evidence."  Jacobs v. New York City Dep't of Educ., No. 11 CV 5058, 2015 WL 7568642, at *3 (E.D.N.Y. Nov. 24, 2015) (quoting Trebor Sportswear Co. v. Limited Stores, Inc., 865 F.2d at 511-12); see also Trebor Sportswear Co. v. Limited Stores, Inc., 865 F.2d at 511-12 (affirming the denial of a request to re-open discovery by the nonmoving party on a motion for summary judgment because there had been adequate time for discovery and the party did not provide a "persuasive basis . . . to conclude that further discovery would yield proof" that would change the outcome of the case); Burlington Coat

---

[4]In the Court's original Order, trial for Phase I was set to begin on January 22, 2018. However, the Court granted a subsequent motion to adjourn the trial, with a hearing on motions in limine and all-other pre-trial issues set for February 12, 2018.

[5]Citations to "Pl.'s Mot." refer to plaintiff's Motion for Discovery, filed on October 27, 2017.

<u>Factory Warehouse Corp. v. Esprit De Corp.</u>, 769 F.2d 919, 925-27 (2d Cir. 1985) (denying

further discovery because there had been "ample time in which to pursue the discovery").

Courts in this Circuit have applied the following six-part test to analyze a request to

reopen discovery:

> 1) whether trial is imminent, 2) whether the request is opposed, 3)
> whether the non-moving party would be prejudiced, 4) whether the
> moving party was diligent in obtaining discovery within the
> guidelines established by the court, 5) the foreseeability of the
> need for additional discovery in light of the time allowed for
> discovery by the district court, and 6) the likelihood that the
> discovery will lead to relevant evidence.

<u>Pierre v. Hilton Rose Hall Resort & Spa</u>, No. 14 CV 3790, 2016 WL 2745821, at *3 (E.D.N.Y.

May 11, 2016) (citing cases).

Where discovery is re-opened, the normal rules governing discovery apply.   That is,

parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's

claim or defenses and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).


II.  <u>Analysis</u>

A. <u>Phase I Requests</u>

1. <u>Facts Underlying Officer Hugasian's Prior Disciplinary History</u>

As for his Phase I requests, plaintiff argues that "in its recent order, the Court left open

the possibility that aspects of defendant Hugasian's prior disciplinary history regarding overtime

fraud would come before the jury in Phase I of the trial." (Pl.'s Mot. at 4) (citing Order at 10–11)

(ruling that evidence of Officer Hugasian's 2010 suspension for requesting overtime

compensation for tours he did not perform would not be introduced at trial, but "the facts on

which it was based may be").  Accordingly, plaintiff requests that defendants be compelled to

4

provide the "'GO-15' Hearing audio recordings and transcripts, and all charging documents, pleadings, agreements and other unproduced documents related to Hugasian's overtime abuse cases.'" (Pl.'s Mot. at 4).

The Court proceeds to assess the factors described above to assess whether discovery should be re-opened for the purpose of obtaining the underlying disciplinary files for Officer Hugasian's overtime abuse cases.

### a. Factor One: Whether Trial is Imminent

As discussed supra, Phase I of the trial in this case is scheduled to commence on February 20, 2018. (ECF No. 120). No date has yet been set for Phase II of the trial.

Plaintiff argues that since Phase I is not scheduled to commence for approximately three months, defendant has "adequate time" to produce the requested discovery. (Pl.'s Mot. at 2). Defendant, on the other hand, describes trial as "imminent," and argues that the case law plaintiff itself cites supports the denial of plaintiff's motion. (Defs.' Resp.[6] at 3) (citing Spencer v. International Shoppes, 2011 WL 3625582, at *2 (finding that this factor weighed in favor of the nonmoving party when trial was scheduled to begin within one month of the court's order)).

In this case, trial is not scheduled to start in only a month, unlike the trial in Spencer v. International Shoppes. However, three months until the start of trial—including the next two months, which involve major holidays—is a short amount of time to comply with a broad discovery request. Accordingly, the Court finds that this factor is neutral with regards to re-opening discovery.

---

[6]Citations to "Defs.' Resp." refer to defendants' reply in opposition to plaintiff's motion for discovery, filed on November 6, 2017.

b. Factors Two & Three: Whether Request is Opposed/Prejudice

Plaintiff argues that "while defendants may oppose plaintiff's request, they will be unable to offer any compelling merits argument in opposition or articulate any substantive prejudice." (Pl.'s Mot. at 2).

Defendants argue that "plaintiff's request to re-open discovery after the Court has already ruled on Defendants' summary judgment motion would certainly prejudice the Defendants." (Defs.' Resp. at 3) (citing Morgan v. County of Nassau, No. 13 CV 06524, 2017 U.S. Dist. Lexis 22992, at *15-16 (E.D.N.Y. Feb. 17, 2017)).  Defendants argue that, in this case, "not only has the discovery deadline passed and summary judgment motions been submitted, but Defendants' motion for summary judgment has already been decided."  (Id. at 3).  Defendants claim that re-opening discovery at this time "would prejudice Defendants as the new information obtained pursuant to the re-opening of discovery would be discovery that Defendants were unable to rely on when submitting their motion for partial summary judgment."[7]  (Id.)

Additionally, defendants argue that "re-opening discovery would force the Defendants to engage in extensive discovery that would involve voluminous documents, as well as additional depositions, while Defendants are preparing for trial . . . the breadth of the discovery - records and depositions - on the eve of trial requires substantial resources, which alone amounts to prejudice."  (Id.)

While defendants' second argument about the volume of documents and additional depositions relates more to plaintiff's request for Phase II discovery instead of plaintiff's request

_____

[7]The Court is not persuaded by this latter argument because if defendants wished to rely on documents in their possession to support their motion for partial summary judgment, they had many opportunities to disclose these documents earlier.

6

for Phase I discovery, the Court still finds that these factors weigh slightly against re-opening

discovery for Phase I as well.  Although the Phase I discovery sought by plaintiff would not

"negate the prior discovery exchanged by the parties," it could prejudice the defendant by

diverting resources from preparing for trial.  <u>Pierre v. Rose Hilton</u>, 2016 WL 2745821, at *3.

Therefore, the Court finds that these factors weigh slightly against re-opening discovery.


### c. <u>Factor Four: Diligence in Pursuing the Discovery Sought</u>

Plaintiff argues that "the docket sheet reveals that plaintiff has exercised utmost diligence

in prosecuting the matter." (Pl.'s Mot. at 2).  Defendants do not specifically respond to plaintiff's

diligence as it concerns Phase I requests, but do note that the Phase I discovery was previously

sought. (Defs.' Resp. at 3).

The logic of several cases in this district in addressing this factor does not apply here.

For example, in <u>Jacobs v. New York City Department of Education</u>, plaintiff's first counsel had

chosen not to depose two material witnesses, and had sought leave to withdraw from

representing plaintiff immediately after informing the court that discovery was complete.  In

assessing this factor of "diligence" on plaintiff's subsequent motion to re-open discovery, the

court noted that "plaintiff was diligent, but for her first attorney's lack of zealous advocacy or

interest in pursuing her claims."  2015 WL 7568642, at *5.

In <u>Pierre v. Hilton Rose Hall Resort & Spa</u>, the plaintiff sought to re-open discovery to

inspect the subject pool in a personal injury case.  Since the pool was located in Jamaica, and the

court had already discussed "several discovery steps Plaintiff might have pursued, including

discovery in Jamaica," the court denied plaintiff's request to re-open discovery.  2016 WL

2745821, at *4.

7

Similarly, in Morgan v. County of Nassau, cited by defendants, the plaintiffs moved to compel defendants to produce post-arrest investigation evidence in a false arrest case. 2017 U.S. Dist. Lexis 22992, at *15-16 (E.D.N.Y. Feb. 17, 2017). The plaintiffs also sought an opportunity to depose defendants, who "apparently were never deposed during discovery." Id. at *13. The Court denied their motion, finding that, since plaintiffs had communicated with the Court numerous times throughout the discovery period and thereafter, but "waited over a year and a half to raise the instant discovery requests," they had not been diligent. Id. at *15-16.

However, at least one court has assessed not only the diligence of the moving party in pursuing discovery during the previous discovery period, but also the diligence of the moving party in bringing a renewed motion to re-open discovery. In Spencer v. International Shoppes, cited by both parties in their briefs, the plaintiff had a stroke after the time that discovery closed. 2011 WL 3625582, at *1. Plaintiff wished to re-open discovery to introduce evidence of the stroke at trial, and to seek damages based on the theory that the ongoing litigation had caused the stroke. Id. The stroke allegedly occurred on July 16, 2011, and plaintiff sought the court's permission to re-open discovery on August 3, 2011. Id. The court, therefore, found that, since the plaintiff made the application within two weeks after the stroke, he was "diligent in seeking the discovery." Id.

In this case, the Court notes that there has been no change of counsel since the commencement of this suit, nor has the Court outlined steps for the plaintiff to request certain discovery that he then chose not to follow.[8] Indeed, plaintiff diligently requested this

---

[8]Plaintiff and defendants agree that plaintiff previously requested these items when the case was assigned to Magistrate Judge Go. (See Pl.'s Mot. at 4; Defs.' Resp. at 4 (citing Docket Entry 56; Aug. 8, 2016 ECF Minute Entry; Aug. 18, 2016 ECF Minute Entry)). However, it seems that, while plaintiff previously requested these items, Magistrate Judge Go only reviewed,

information during discovery and was unable to obtain it because the magistrate judge, in assessing the case, determined that it was not necessary in light of the claims. Given the district court's recent ruling, however, which suggests a broader reading of the claims, the relevance of these documents seems clearer.

Moreover, the Court notes that, almost immediately after learning of the district court's ruling on October 17, 2017, granting in part and denying in part defendants' motion for partial summary judgment and clarifying the scope of the plaintiff's <u>Monell</u> claim, plaintiff brought this motion. If the Court were to measure "diligence" in a way similar to the court in <u>Spencer v. International Shoppes</u>, the plaintiff here brought this motion to re-open discovery in a timely manner after the Court bifurcated the trial and issued its rulings on defendants' summary judgment motion on October 17, 2017.

Taking into consideration all of the above, the Court finds that this factor favors the re-opening of discovery.

### d. <u>Factor Five:  Foreseeability of Need for Additional Discovery</u>

In terms of factor five, a review of plaintiff's opposition to defendants' motion for partial summary judgment indicates that he has received two reports summarizing incidents from May

---

<u>in camera</u>, the closing report from these files. (<u>See</u> 7/5/2016 Disc. Hr'g Tr. 23, 61 (explaining that the Court was "not requiring [defendants] to provide the underlying files at this juncture;" emphasizing that "[defendants] don't need to produce the entire file to [the Court];" only "the closing report and/or the charges.")). Accordingly, the Court disagrees with defendants' characterization of Magistrate Go's prior rulings that she "reviewed the *unredacted* disciplinary documents during an *in-camera* inspection" (emphasis in original) insofar as it does not appear that Magistrate Go reviewed the underlying files, which plaintiff now requests. (Defs.' Resp. at 4).

9

4, 2007 to May 4, 2008 involving Officer Hugasian's overtime submissions. (Decl.[9], Ex. 9). However, these reports do not include the specific facts that led, ultimately, to Officer Hugasian's suspension.

Given Judge Weinstein's ruling that he would not allow in evidence of defendant Officer Hugasian's discipline, but might allow in evidence of the underlying facts regarding this suspension, the plaintiff requires these documents to make a motion in limine for Phase I of the trial regarding Officer Hugasian. It was not necessarily foreseeable that Judge Weinstein would restrict the evidence for a motion in limine in this manner, and plaintiff might have earlier believed that he could rely on the conclusions from the closing reports instead of their underlying facts for this motion.

Therefore, given the Court's ruling as to motions in limine for the upcoming Phase I of the trial, this factor weighs in favor of re-opening discovery for this purpose.

### e. Factor Six: Relevance of Additional Discovery

In terms of the relevance of charging documents, pleadings, and other documents pertaining to Officer Hugasian's disciplinary hearings and overtime reports, as described above, these documents may be relevant to any motion in limine in Phase I.[10]

---

[9]Citations to "Decl." refer to the Declaration of Gabriel P. Harvis in Opposition to Defendants' Motion for Partial Summary Judgment, filed on August 21, 2017.

[10]To the extent that defendants argue that documents responsive to this request would be unduly burdensome to produce, the Court notes that these documents would likely be relevant for Phase II as well. Therefore, even if the Court did not find these documents relevant for Phase I discovery, the Court would grant plaintiff's request to produce them for Phase II. Defendants will have more time to produce these records at this juncture, instead of waiting for the liability phase to conclude before producing any of the documents that they believe might be relevant for Phase II, as they request. (Defs.' Resp. at 4).

Thus, in light of all of the above considerations, the Court grants plaintiff's request to re-open discovery to compel defendants to produce the GO-15 Hearing audio recordings and transcripts, and all charging documents, pleadings, agreements and other unproduced documents related to Officer Hugasian's overtime abuse cases.[11]

### 2. Individual Defendants' Overtime Requests and Payroll Records

In addition, "to allow plaintiff to fully present his case at Phase I of the trial," plaintiff requests that defendants be compelled to produce "all overtime requests submitted by the individual defendants in the last ten years, along with payroll records showing the corresponding amount paid to each defendant for each overtime tour." (Id. at 4–5). The Court proceeds to assess these requests separately for the individual defendants.

### a. Requests as to Officers Rubin and Essig

First, the Court notes that Judge Weinstein granted summary judgment in favor of two of the individual defendant officers on plaintiff's false arrest claims. (Order at 19). Therefore, Phase I will include the false arrest claim *only* against Officer Hugasian. The claims against the other officer defendants—Officer Rubin and Officer Essig—for unlawful strip search and failure to intervene, respectively, will also proceed in Phase I. However, the issue of overtime fraud in this case will only be relevant to a theory of motivation as to the false arrest (and the supervision of false arrest, for Lieutenant Moran), but not to plaintiff's theories as to unlawful strip search or

---

[11]The Court notes that the NYPD investigated Officer Hugasian for approximately two years in between the first complaint in 2008, and his suspension in 2010. The Court finds that the notes during the monitoring period are relevant to whether or not Officer Hugasian complied with his overtime requirements, and therefore Orders these produced as well.

11

failure to intervene.  (See Order at 4) (explaining that "[plaintiff's] theory is that the police department has long been aware of a wide-spread practice of *false arrests at the end of tours of duty in order to obtain overtime . . .*") (emphasis added).

Therefore, the Court finds that this broad discovery request fails to meet the touchstone principle of relevance generally, in that the requested documents for Officer Rubin and Officer Essig are not relevant to the claims against them that will be tried in Phase I.  This request for Officer Rubin and Officer Essig's overtime requests and payroll records, within plaintiff's Phase I requests, is accordingly denied.

b.  Requests as to Officer Hugasian and Lieutenant Moran

With regard to these requests as to Officer Hugasian and Lieutenant Moran, the Court finds that Officer Hugasian's overtime requests and payroll records for the overtime tours of the past ten years[12] are relevant to presenting the underlying facts of his overtime history in a motion in limine.  While the Officers' overtime requests and payroll records do not, on their own, indicate wrongdoing on the part of the officers,[13] these records, when coupled with the

---

[12]As described above, a review of the documents in this case indicates that the investigation of Officer Hugasian's overtime falsification began in 2008, with incidents beginning in May 2007.  The ten-year lookback of these materials, then, encompasses this time.

[13]Defendants argue that these requests are more properly addressed in the context of Phase II discovery. (Defs.' Resp. at 4) (arguing that "the information plaintiff requests would not be admitted during Phase I of the trial, as this would be considered as evidence related to Plaintiff's *Monell* claim.")  The Court agrees in part and disagrees in part.  The overtime requests and payroll records do not, in and of themselves, indicate any *misuse* of overtime, only that overtime was requested and paid.  The Court does not find this relevant for Phase I except for the two defendants discussed above, and only in conjunction with the underlying records of overtime abuse, as described above.  However, this request might be relevant in Phase II for plaintiff's argument about the City's pattern and practice of failing to adequately "impos[e] punishment in credible perjury and overtime abuse cases . . ." (Pl.'s Mot. at 4).

disciplinary records discussed above, may be used, in Phase I, to craft an argument about Officer

Hugasian's and Lieutenant Moran's incentive for either ordering an allegedly false arrest or

supervising it, respectively, and may be relevant to credibility.

The Court, therefore, grants plaintiff's requests for overtime requests and corresponding

payroll records as to Officer Hugasian and Lieutenant Moran, only.


### B. Phase II Requests

As for his Phase II requests, plaintiff seeks "unredacted copies of relevant investigatory

case files, along with training and policy materials." (Id. at 4). Plaintiff also requests leave "to

depose relevant final policymakers" within the New York Police Department ("NYPD"), the

Internal Affairs Bureau, ("IAB"), the NYPD's Office of the Department Advocate, ("DAO"), and

the NYPD's Performance Analysis Section ("PAS"). (Id.)

Plaintiff argues that "it would have been difficult for him to have anticipated the scope of

the *Monell* hearing as ultimately ordered by the Court." (Pl.'s Mot. at 2). However, even if this

Court agreed, and the rest of the factors described above weighed in favor of re-opening

discovery for Phase II, the Court must still assess the relevance and proportionality of the request

per the normal rules of discovery. The Court finds that plaintiff's description of the discovery

sought in Phase II is so broad that the Court cannot determine whether these documents and

depositions would be relevant and proportional. For example, while plaintiff describes three

Monell arguments that he intends to pursue in Phase II of the trial, he does not point to who the

relevant final policymakers are that he would seek to depose, nor does plaintiff describe in any

detail what training and policy materials he seeks. (Pl.'s Mot. at 3).

Therefore, plaintiff's Phase II requests are denied, without prejudice to plaintiff

13

submitting more specific requests.

CONCLUSION

In light of the foregoing, the Court grants the plaintiff's motion in part and denies the plaintiff's motion in part. As for Phase I of the trial, the Court re-opens discovery regarding Officer Hugasian's GO-15 Hearing audio recordings and transcripts, and charging documents, pleadings, agreements and other unproduced documents regarding his overtime cases. The Court also grants the re-opening of discovery for the overtime requests, and corresponding payroll records, of Officer Hugasian and Lieutenant Moran, but denies these requests as to Officer Rubin and Officer Essig. **Defendants are Ordered to produce this information by December 8, 2017.**

The Court denies plaintiff's Phase II requests without prejudice to re-submit. **If plaintiff wishes to re-submit a more specific Phase II request, such request is due by November 27, 2017, with defendants' response due by December 1.**

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated:  Brooklyn, New York
      November 2, 2017

                                    /s/  Cheryl Pollak
                                Cheryl L. Pollak
                                United States Magistrate Judge
                                Eastern District of New York

14