UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HECTOR CORDERO,

                    Plaintiff,                            **ORDER**
                                                          15 CV 3436 (JBW)(CLP)

        - against -

CITY OF NEW YORK, et al.,

                    Defendants.
-----------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

On June 12, 2015, Hector Cordero ("plaintiff") commenced this action, pursuant to 42
U.S.C. §§ 1983 and 1988, against defendants the City of New York and John and Jane Doe 1
through 10, individually and in their official capacities, alleging violations of his Fourth, Fifth,
Sixth, and Fourteenth Amendment rights.  On November 30, 2015, plaintiff filed an Amended
Complaint, adding as defendants Lieutenant Christopher Moran and Police Officers Hugo
Hugasian, Paul Palminteri, Raul Narea, John Essig, Lynette Reyes, Peter Rubin, and Marco
Artale, and John and Jane Doe 1 through 10, individually and in their official capacities
(collectively, "defendants").[1]

On October 17, 2017, the district court issued a Memorandum and Order granting in
part and denying in part defendants' motion for summary judgment.  The district court then
Ordered that the trial in this matter should proceed in two phases.  The first phase of this
bifurcated trial is scheduled to begin on February 20, 2018, and will proceed against the

---

[1] On August 2, 2017, the district court dismissed the claims against Paul Palminteri,
Marco Artale, Lynette Reyes, and Raul Narea with prejudice.

individual officer defendants.  Phase II will proceed if the jury finds against the individual defendants in the first phase, but the second phase of the trial has not yet been scheduled. Motions in limine will be heard before the Honorable Jack Weinstein on February 12, 2018.

On November 21, 2017, this Court made certain rulings after reviewing the plaintiff's motion to re-open discovery.  Specifically, the Court Ordered certain documents to be produced for Phase I of the trial, and denied plaintiff's Phase II requests without prejudice to resubmit more specific requests.  This Order addresses plaintiff's supplemental requests for Phase II discovery.[2]

DISCUSSION

I.      Motion to Stay Discovery

As an initial matter, defendants submit that "the discovery should be held in abeyance until after Phase I of the liability trial."  (Defs.' Resp. at 6).

In order to prevail on a motion to stay discovery, the movant bears the burden of demonstrating good cause and reasonableness to support the stay.   Fed. R. Civ. P. 26(c)(1). This specific factual showing must outweigh the delay that will result from the stay.  Id.

Defendants argue, essentially, that they will be unduly burdened and prejudiced by having to produce the discovery sought by plaintiff, especially in light of the fact that Phase II of the trial will only proceed if there is a finding of individual liability in Phase I.

---

[2] Citations to "Pl.'s Mot." refer to plaintiff's Reply in Support (respectfully submitting a more specific request for Phase II discovery), filed on November 27, 2017; citations to "Defs.' Resp." refer to defendants' Reply in Opposition, filed on December 6, 2017.

However, at this point, the district court has set a date for Phase I of the trial, and, as will be discussed further below, has indicated a fairly broad interpretation of the claims that will be brought during the trial.  Accordingly, recognizing that it is "within [the Court's] discretion to time document production," this Court will not stay discovery absent the district court's indication that discovery itself should be bifurcated.  Lang v. Wal-Mart Stores, Inc., No. 15 CV 2528 (E.D.N.Y. Jul. 17, 2015).   As to the defendants' position about being unduly prejudiced, the Court addresses this prejudice in relation to plaintiff's specific document requests, discussed below.


II.   Re-Opening Discovery

a.   Legal Standard

As discussed in this Court's November 21 Order,[3] the party seeking to re-open discovery—in this case, the plaintiff—bears the burden of establishing good cause.  Spencer v. International Shoppes, Inc., No. 06 CV 2637, 2011 WL 3625582, at *1 (E.D.N.Y. Aug. 16, 2011) (citing Trebor Sportswear Co. v. Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989)). Courts in this Circuit have applied the following factors to assess a request to re-open discovery:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

---

[3]Citations to "Nov. 21, 2017 Order" refer to this Court's Order, filed on Nov. 21, 2017.

3

Pierre v. Hilton Rose Hall Resort & Spa, No. 14 CV 3790, 2016 WL 2745821, at *3 (E.D.N.Y. May 11, 2016) (citing cases).

       b.  <u>Analysis</u>

Plaintiff's primary argument in favor of re-opening discovery is based on the scope of the inquiry which the district court, in its October 17 decision, suggested would be allowed on his <u>Monell</u> claim.  Specifically, the district court Ordered:

> In the present case the court will allow the plaintiff to proceed against the City of New York on *Monell* grounds that allege the failure to take reasonable steps to control lying by policy officers is a policy of the NYPD.  *See Monell v. Department of Social Services,* 436 U.S. 658 (1978).  His theory is that the police department has long been aware of a wide-spread practice of false arrests at the end of tours of duty in order to obtain overtime and that it has failed to sufficiently address this practice.  Plaintiff argues that the city's policy is not to track or adequately discipline policemen for testifying falsely.  And that it has failed to supervise or properly discipline police officers with a record of being unsuccessful defendants in Title 42 U.S. Code Section 1983 cases because they fabricated evidence.

(Oct. 17, 2017 Order[4] at 4).  The Court continued:

> There is sufficient evidence for plaintiff to proceed on the grounds that: (1) New York city's overtime policy incentivizes officers to make false arrests; and (2) police malfeasance in general and as related to the overtime policy is inadequately monitored to prevent abuse.  A reasonable jury may find that this practice is not isolated to a few "bad" police officers, but is endemic, that NYPD officials are aware this pattern exists and that they have failed to intervene and properly supervise.

---

[4]Citations to "Oct. 17, 2017 Order" refer to the district court's Memorandum and Order, dated October 17, 2017.

(Id. at 20) (citing Floyd v. City of New York, 959 F. Supp. 2d 540, 564 (S.D.N.Y. 2013) (internal citations omitted)).  Plaintiff asserts that his request to reopen discover now is justified because "it would have been difficult . . . to anticipate[] the scope of the Monell hearing as ultimately ordered by the Court."  (Pl.'s Oct. 27, 2017 Mot.[5]).

In response, defendants argue that "the history of this case belies this argument. Plaintiff was aware of the overtime disciplinary [history] related to the defendant officer, which formed the basis of his Monell claim, more than a year and a half prior to filing the instant motion, and could have surely made his request for Monell [discovery] at any point during the pendency of this action, but . . . Plaintiff made a decision *not* to pursue Monell discovery."  (Defs.' Resp. at 1-2).

The Court previously addressed a similar argument in its November 21 Order regarding Phase I discovery—namely, that in reviewing the previous magistrate judge's rulings on various discovery disputes in this case, it seems that plaintiff *did* request certain discovery, including Monell discovery, but was "unable to obtain it because the magistrate judge, in assessing the case, determined that it was not necessary in light of the claims."  (Nov. 21, 2017 Order at 8-9).  As this Court previously explained, "[g]iven the district court's recent ruling, however, which suggests a broader reading of the claims, the relevance of these documents seems clearer."  (Id.)

---

[5]Citations to "Pl.'s Oct. 27, 2017 Mot." refer to plaintiff's first motion for discovery, filed on October 27, 2017.

Defendants' primary argument against re-opening discovery is the prejudice that defendants will incur.  For example, defendants contend that they would be unduly prejudiced by having to turn over such a large amount of discovery as they prepare for Phase I of the trial.  They argue that "practically speaking, there is no time to actually conduct the discovery sought by Plaintiff."  (Defs.' Resp. at 2).

The Court finds that the factors of foreseeability and diligence weigh in favor of re-opening discovery for the reasons discussed above—specifically, that plaintiffs did seek certain Monell discovery previously, but were unsuccessful because of the magistrate judge's interpretation of the breadth of claims that would likely be heard by the district court.  While the Court appreciates the defendants' concern that reopening discovery at this time would take away from counsel's trial preparation activities, absent an indication from the district court that the judge would permit an extended period of time between the Phase I and Phase II trials to allow for additional discovery, the Court is constrained to find that the value of the requested discovery outweighs the prejudice cited by defendants' counsel.   To address this factor of potential prejudice, the Court encourages Corporation Counsel to assist assigned counsel by adding more attorneys to this case who can aid in preparing for Phase I of the trial and assembling the documents responsive to the Phase II requests.

In light of the above, the Court grants plaintiff's request to re-open discovery for plaintiff's Phase II requests, and proceeds to consider these requests substantively below.

III.    Substantive Requests

a.    Legal Standard

Where discovery is re-opened, the normal rules governing discovery apply.   That is, parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defenses and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  The Court proceeds to analyze plaintiff's document requests prior to considering his requests for proposed deposition topics, since the content of the depositions will depend in part on the documents received.

i.    Document Requests

As an initial matter, defendants argue that plaintiff's requests for information and documents that post-date the underlying incident are improper.  They maintain that "plaintiff's requests that post-date the incident are irrelevant and not proportional to the case because it would be impossible to state that the City 'actually caused or was the moving force behind the alleged violations'" since they "could not have put the City on notice of any alleged deficiency."  (Defs.' Resp. at 3) (citing Connick v. Thompson, 563 U.S. 51, 63 (2011) (finding that "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates . . . '"); (Reynolds v. Guiliani, 506 F.3d 183, 193 (2d Cir. 2007)).

The Court agrees with the defendants that documents about incidents occurring after Mr. Cordero's arrest are irrelevant to the claims that will be tried by plaintiff in either phases of the trial.  This is particularly true in light of the fact that plaintiff does not seek injunctive

relief, but rather damages related to the October 2014 incident.[6]  Since plaintiff's arrest

occurred in October 2014, the Court narrows plaintiff's requests to documents from October

2012 to October 2014.  These documents are relevant to the issue of whether the City had

notice of a pattern or practice of falsifying overtime requests at the time of Mr. Cordero's

arrest, and the Court finds that these incidents are close enough temporally to meet the

requirement of proportionality.

In light of this amended discovery request to comply with the Federal Rules'

proportionality requirement, the Court proceeds to assess plaintiff's requests and defendants'

specific objections.


1.  <u>Document Request Number 1</u>

First, plaintiff requests "all statistical data and data compilations regarding (a) overtime

abuse or (b) officer false statements maintained by the NYPD, including all available data on

rate of incidence, patterns and trends at the unit (i.e. "SNEU"), precinct, sub-borough (i.e.

"Manhattan North"), borough and citywide levels, in native format, for the period 2012-

present.  (Pl.'s Mot. at 3).

Defendants contend that "these requests seek information that contains NYPD's

decisions and processes that is protected under the deliberative process privilege."  (Defs.'

Resp. at 5).  Plaintiff, anticipating this argument, responds that "he does not seek privileged

information, but only data necessary to establish the prevalence of overtime abuse and police

lying within NYPD and the information available to municipal policymakers."  (Pl.'s Mot. at 3)

---

[6]<u>See</u> Amended Complaint, filed by Hector Cordero on November 30, 2015, at 11.

8

(citing Oct. 17, 2017 Order) (citing <u>Reynolds v. Guiliani</u>, 506 F.3d at 192; <u>City of Canton v. Harris</u>, 489 U.S. 378, 395 (1989)).

      The deliberative process privilege precludes disclosure of "'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" <u>National Council of La Raza v. Dep't of Justice</u>, 411 F.3d 350, 356 (2d Cir. 2005) (quoting <u>Tigue v. U.S. Dep't of Justice</u>, 312 F.3d 70, 76 (2d Cir. 2002), <u>cert. denied</u>, 538 U.S. 1056 (2003)).  To be subject to the privilege, a document must be both "predecisional" and "deliberative."  <u>See, e.g.</u>, <u>Davis v. City of New York.</u>, No. 10 Civ. 699, 2011 WL 1742748, at *2 (S.D.N.Y. May 5, 2011) (internal citations omitted).  "[P]urely factual material," as well as "materials related to the explanation, interpretation or application of an existing policy, as opposed to the formulation of a new policy," are not subject to the privilege.  <u>Id.</u>; <u>see also</u> <u>E.B. v. New York City Bd. of Educ.</u>, 233 F.R.D. 289, 292 (E.D.N.Y. 2005) (holding that "factual findings and conclusions, as opposed to opinions and recommendations, are not protected.")

      Documents are considered "predecisional" if they are "prepared in order to assist an agency decisionmaker in arriving at his decision."  <u>National Council of La Raza v. Dep't of Justice</u>, 411 F.3d at 356 (internal citations omitted); <u>see also</u> <u>Bishop v. County of Suffolk</u>, 248 F. Supp. 3d 381 (E.D.N.Y. 2017)).  "Such materials include 'recommendations, draft documents, proposals, suggestions, and other subjective documents [that] reflect the personal opinions of the writer rather than the policy of the agency.'" <u>Davis v. City of N.Y.</u>, 2011 WL 1742748, at *2 n.19 (internal citations omitted).

Documents are "deliberative" if they are "'actually . . . related to the process by which policies are formulated.'"  Id. (citing National Council of La Raza v. Dep't of Justice, 411 F.3d at 356).  Courts considering whether a document should be deemed deliberative analyze "'whether the document (i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency.'"  Id. (quoting Grand Cent. Partnership v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999)).

The Court agrees with the plaintiff that the "purely factual" request for statistical data and data compilations regarding overtime abuse or officer false statements does not fall under the deliberative process privilege.  See Davis v. City of New York, 2012 WL 612794, at *5. Accordingly, the Court grants plaintiff's request to compel defendants to disclose this data within the time frame of 2012 to 2014.[7]

2.  Document Requests Numbers 2, 3, and 4

These document requests are, respectively:  "all adverse judicial credibility determinations involving NYPD officers issued 2012-present that are in the possession of NYPD" (Doc. Request No. 2); "all letters, memoranda and other communications received by NYPD from the office of any judge or district attorney regarding the credibility of any NYPD officer, from 2012-present" (Doc. Request No. 3); and "on a confidential basis, documents

---

[7] Defendants further argue that the "request for false statements on a general basis" "is not proportional to plaintiff's Monell claim."  (Defs.' Resp. at 5).  The Court addressed the proportionality of plaintiff's request by limiting the requests in general to documents from 2012 to 2014.

reflecting the nature and outcome of investigations undertaken by NYPD in response to information contained in any document responsive to (2) or (3) above" (Doc. Request No. 4).

Defendants argue that these requests "are vague and ambiguous concerning the term 'adverse judicial credibility determinations,' as this term could be construed to have various meanings and would encompass a large scope of unrelated information." (Defs.' Resp. at 3-4). They note that "such a determination could be based on contradicting evidence and testimony," and "not necessarily relate to a person committing *perjury.*" (Id.) (emphasis in original).

The Court agrees with defendants that the term "adverse judicial credibility determination" is overly broad and vague, and may include instances where the court credited another witness' testimony over that of an NYPD officer—not because the officer lied, necessarily, but perhaps because the witness had a better perspective or more information than the officer. Thus, the Court narrows plaintiff's Request No. 2 to instances in which an adverse judicial finding or communication reports an incident involving perjury, lying, or false statements on the part of the officer.[8] Moreover, the Court interprets this document request in the context of Document Request No. 3, described above. In that request, plaintiff seeks documents reflecting communications between the NYPD and the "office of any judge or any district attorney" regarding the credibility of any NYPD officer; thus, the Court interprets these requests as seeking documents relating to a judicial finding or opinion or from a district

---

[8]While the Court interprets plaintiff's request for "judicial" credibility decisions to mean non-CCRB cases, the Court still finds that the CCRB's definition of "false statement" is helpful for this last category: "in order to sustain a false official statement allegation, it must be proven that: (1) an officer made a statement; (2) the statement was material; and (3) the statement was intentionally false." See, e.g., NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, 2014 ANNUAL REPORT, *available at* http://www.nyc.gov/html/ccrb/downloads/pdf/2014-annual-report-rev2layout.pdf.

attorney's office relating to an officer's credibility, and not relating to any internal review processes, such as the Civilian Complaint Review Board (the "CCRB") or the Internal Affairs Bureau (the "IAB").

Accordingly, the Court narrows plaintiff's Requests Numbers 2, 3, and 4 to documents from or relating to cases between 2012 and 2014 in which a judge or district attorney found that the police officer had committed perjury, had otherwise lied, or made false statements.

The cases in which a judge or district attorney made these findings will not likely be protected by the privileges that defendants raise. Rather, as plaintiff points out, even if the cases themselves might have been sealed, "rendering ostensibly public indicators of corruption practically inaccessible" (Pl.'s Mot. at 1 n.1), to the extent that documents requested in Document Request Numbers 3 or 4 might be protected under any privilege, both Federal Rule of Civil Procedure 26(b)(5) and Local Civil Rule 26.2 require a party withholding documents to set forth an index of the withheld documents. See Fed. R. Civ. Pro 26(b)(5); Local Rule 26.2. In order to satisfy the requirements of these rules, this index must "set[] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed'" for each document. Davis v. City of New York, 2012 WL 612794, at *5. The party asserting the privilege has the burden of establishing through its privilege log or other evidentiary materials that the privilege exists. Id.

Accordingly, defendants are directed to prepare a privilege log regarding any documents responsive to Requests 2, 3 and 4 that might raise deliberative process or another privilege they wish to invoke. In preparing this log, defendants are encouraged to be mindful of the guidelines for setting forth a *specific* justification that will allow the Court to make a

determination about whether the privilege applies, particularly in light of the timeline of this case.  See, e.g., Safeco Ins. Co. of Am. v. M.E.S., Inc., 289 F.R.D. 41, 48 (E.D.N.Y. 2011) (holding that when a privilege log is not "adequately detailed," the proponent does not meet its "heavy burden of proving that the privilege or protection applies to the documents or communications at issue") (internal citations omitted).

3.   Document Request Number 5

Plaintiff requests "all documents concerning the City of New York's implementation of the [Commission to Combat Police Corruption's 2017] Report recommendations."  While this Report is from 2017, any statistics and data compiled or reviewed about the relevant time period at issue would be discoverable.  To the extent that documents concerning the implementation of recommendations for future action might include the deliberative process privilege, defendants should list these documents in their privilege index.

4.   Document Request Number 6

Plaintiffs seek "all documents concerning the City of New York's implementation" of the report Using Data from Lawsuits and Legal Claims Involving NYPD to Improve Policing, Office of the Inspector General, April 20, 2015.  Since the report at issue is from 2015, the City likely used data from lawsuits and legal claims involving NYPD in the subject time period at issue in this case to inform this report.  This data and analysis is discoverable, but to the extent that the deliberative process privilege could be asserted about any of these documents, these should be included in defendants' index.

13

### 5.   Document Request Number 7

Plaintiff seeks "all documents concerning the City of New York's revision of Patrol

Guide § 203-08 [Making False Statements]" which was revised in 2007 to "exempt 'mere

denials'" and "add a 'materiality requirement.'"  (Pl.'s Mot. at 3).   This policy change is

relevant to plaintiff's contention that the NYPD has long been aware of the problems of

officers making false statements or lying.  However, to the extent that the documents

concerning the policy change might be covered by the deliberative process privilege,

defendants are directed to include specific descriptions in their privilege log.


### 6.   Document Request Number 8

Plaintiff requests "all documents relied upon by Joseph Reznick in drafting the April 8,

2014 memorandum" described in the article NYPD Internal Affairs Chief Sends Scathing

Memo Warning Cops Against Making Arrests Just to Earn Overtime, New York Daily News,

Apr. 15, 2014, and the memorandum itself.  (Pl.'s Mot. at 3).

Defendants raise two separate objections.  First, they argue that the request is irrelevant

since the memorandum was written about Internal Affairs Bureau employees obtaining

overtime.  (Defs.' Resp. at 5-6).   However, this argument is misplaced.  Plaintiff seeks to

prove, and the district court has expressed a willingness to hear motions in limine related to, a

pattern of deliberate indifference against the City—not just confined to the individual officers'

departments or units within the NYPD.  (See Oct. 17, 2017 Order at 5).  Joseph Reznick is a

decisionmaker for the IAB, the bureau "responsible for investigating allegations of corruption

14

and serious misconduct by police officers."[9]  Thus, evidence regarding a practice by IAB officers to make arrests just to earn overtime is relevant to plaintiff's claim.

Regarding defendants' argument about the contents of the documents Mr. Reznick relied on in drafting his memorandum, to the extent that these documents might involve "deliberative process, attorney-client, attorney work-product, etc" privilege, the Court does not currently possess sufficient information to assess if attorney-client or attorney work-product would be properly asserted here, particularly since Mr. Reznick does not appear to be an attorney representing the IAB, but rather was a decisionmaker *for* the IAB.  To the extent that the City might wish to assert deliberative process privilege as to any of these documents, any data or purely factual information on which Mr. Reznick relied in formulating his memorandum would *not* be protected by the deliberative process privilege.  However, to the extent that Mr. Reznick relied on any "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," the City is Ordered to include a detailed description in its privilege log to allow the Court to assess this claim.


7.   Document Request Number 9

Plaintiff requests "documents related to the NYPD's review of overtime practices" described in the article Amid Controversy, NYPD to Curtail Overtime for Officers on Modified Duty, Politico, Sept. 15, 2016.  While the review of overtime practices described in this article

---

[9]IAB's Investigative Review Unit, *available at* http://www.nyc.gov/html/ccpc/assets/downloads/pdf/iab_investigative_review_unit.pdf

was conducted between 2014 and 2016, to the extent that the data reviewed included data from 2012 to 2014, that data should be disclosed.

### 8.   Document Request Number 10

Plaintiff requests "all NYPD policy and training materials concerning unscheduled overtime reports, overtime analysis reports and court attendance records (collectively 'overtime forms') including: a. the circumstances under which overtime forms are to be completed; b. the way overtime forms are to be completed; c. the way overtime forms are to be reviewed and verified."  (Pl.'s Mot. at 4).

In their response, defendants reiterate the same concerns they had raised previously about Doc. Request No. 1, namely that the information involved contains information covered by deliberative process privilege.  (Defs.' Resp. at 5).  However, as discussed above, deliberative process privilege does not cover the actual, final version of the policy in place, but only the advisory opinions and recommendations that were part of the process of formulating such a final policy.  See Davis v. City of New York, 2012 WL 612794, at *5.

Therefore, the Court grants plaintiff's request for the specific NYPD policy and training materials regarding overtime policies that were in effect between October 2012 and October 2014.

### 9.   Document Request Number 11

Finally, plaintiff requests "a random sample of twenty overtime forms (related to 'arrest processing' overtime) per quarter for each quarter of the period 2012-present."

Defendants argue that this request is overbroad and not proportional to the needs of the case because "there are many scenarios involving officers assisting with arrest processing where the officer had absolutely no involvement in the arrest, but they are merely assisting with completing police paperwork, transporting the arrestee to central booking or the hospital, or some other post-arrest task." (Def.'s Resp. at 6).

Since plaintiff's <u>Monell</u> claim is proceeding on a theory that the City "incentivizes officers to *make* false arrests," (Oct. 17, 2017 Order at 20) (emphasis added), the Court narrows the scope of this request to a sample of twenty overtime requests from each quarter between October 2012 to October 2014 related to "arrest processing" for the officer who actually made the arrest, not the officers who assisted in processing paperwork or other tasks.

ii. <u>Witness Requests</u>

Rule 30(b)(6) of the Rules of Civil Procedure provides:

> A party may in the party's notice and in the subpoena . . . name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.
>
> … The persons so designated shall testify as to the matters known or reasonably available to the organization.

Fed. R. Civ. Pro. Rule 30(b)(6).

The rule imposes burdens on both the discovering party and the designating party. The party seeking discovery through a Rule 30(b)(6) deposition is required to describe "with

reasonable particularity the matters on which examination is requested." Id.  Once served with the deposition notice under Rule 30(b)(6), the responding party is required to produce one or more witnesses knowledgeable about the subject matter of the noticed topics.

Plaintiff is directed to serve Rule 30(b)(6) notices on defendants, specifying the topics to be addressed by the witness.   However, the proposed deposition topics should be modified to reflect the analysis in this Order regarding the plaintiff's requests for documents, including: (1) the definition of "adverse judicial credibility determinations;" and (2) the time limit that the Court discussed previously – namely, that policies that were in place limited to the period between 2012 and 2014.

CONCLUSION

In light of the foregoing, the Court grants plaintiff's request for Phase II discovery in part and denies plaintiff's request in part.  Defendants shall produce all responsive documents and a privilege log for any documents withheld on grounds of privilege by **January 5, 2018**. Plaintiff is Ordered to serve Rule 30(b)(6) deposition notices on defendants by **December 20, 2017.**

**SO ORDERED**.

Dated:  Brooklyn, New York
          December 13, 2017

/s/ Cheryl L. Pollak

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

18