UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

HECTOR CORDERO,

                    Plaintiff,

             -against-

CITY OF NEW YORK; Police Officer HUGO
HUGASIAN, Shield No. 10228; Lieutenant
CHRISTOPHER MORAN; Police Officer PETER
RUBIN, Shield No. 00934; Police Officer JOHN
ESSIG, Shield No. 08667),

                    Defendants.

----------------------------------------------------------------x

15 CV 3436 (JBW) (CLP)

## PLAINTIFF'S MOTIONS *IN LIMINE*

HARVIS & FETT LLP
Gabriel P. Harvis, Esq.
Baree N. Fett, Esq.
305 Broadway, 14th Floor
New York, New York 10007

*Attorneys for plaintiff*

January 30, 2018

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT

POINT I

CERTAIN FACTS REGARDING DEFENDANT HUGASIAN'S PRIOR
MISCONDUCT, BUT NOT EVIDENCE OF HIS DISCIPLINE,
SHOULD BE ADMITTED ................................................................... 1

A. The Conduct is Presumptively Admissible Under Fed. R. Evid.
608(b)(1) ......................................................................................... 5

B. Hugasian's Prior Conduct Bears on Moran's Supervisory Liability ... 8

C. Plaintiff Will Not Offer Evidence of Discipline or Argue Propensity 9

POINT II

PLAINTIFF SHOULD BE PERMITTED TO REQUEST A SPECIFIC
DOLLAR AMOUNT IN SUMMATION ............................................ 10

POINT III

DEFENDANTS SHOULD BE PRECLUDED FROM BOLSTERING
DEFENDANT HUGASIAN .............................................................. 12

POINT IV

DEFENDANTS SHOULD BE PRECLUDED FROM OFFERING
EVIDENCE OF NINOS'S ALLOCUTION OR GUILTY PLEA.......... 12

POINT V

DEFENDANTS LACK ANY GOOD FAITH BASIS TO ARGUE
SPOLIATION ..................................................................................... 13

POINT VI

    DEFENDANTS SHOULD BE PRECLUDED FROM ARGUING THAT
    POSSESSION OF CURRENCY IS EVIDENCE OF CRIMINALITY .. 15

POINT VII

    THE COURT SHOULD PRECLUDE ANY MENTION OF MR.
    CORDERO'S ON-DUTY SHOOTING WHEN HE WAS A POLICE
    OFFICER IN THE DOMINICAN REPUBLIC IN 1983..................... 16

POINT VIII

    DEFENDANTS SHOULD BE PRECLUDED FROM DESCRIBING
    THE AREA OF J&C MINIMARKET AS DRUG-PRONE, OR
    REFERRING TO THE SCURGE OF DRUGS OR THE DANGERS OF
    POLICING ......................................................................... 17

POINT IX

    RELEVANT SECTIONS OF THE PATROL GUIDE SHOULD BE
    ADMITTED ....................................................................... 18

CONCLUSION ................................................................. 19

<u>Preliminary Statement</u>

Plaintiff respectfully requests that the Court issue the following *in limine* rulings regarding evidence to be offered at the upcoming Phase I trial.

<u>ARGUMENT</u>

<u>POINT I</u>

<u>CERTAIN FACTS REGARDING DEFENDANT HUGASIAN'S PRIOR MISCONDUCT, BUT NOT EVIDENCE OF HIS DISCIPLINE, SHOULD BE ADMITTED</u>

In its decision denying summary judgment dated October 21, 2017, the Court stated:

> In 2010 Officer Hugasian was suspended from duty for sixty days, docked thirty days of vacation time, stripped of his gun and his badge, required to pay $1203.74 in restitution, and placed on one-year probation for requesting overtime compensation for tours he did not perform. *See* Disciplinary Records Hugo Hugasian, ECF No. 111, Exh. 9, Aug. 22, 2017. This evidence of discipline will not be introduced at trial. The facts on which it was based may be; this question will be answered at an *in limine* hearing.

*Cordero v. City of New York*, ___ F.Supp.3d ____, 2017 WL 4685544, *6 (E.D.N.Y. Oct. 17, 2017).

Plaintiff respectfully submits that this question should be answered in the affirmative. This case rises and falls on the credibility of defendant Hugo Hugasian, Jr. in his capacity as sole eyewitness to the alleged drug transaction. It is a matter beyond

dispute that defendant Hugasian has ███████████████ [1] ███████████

████████, to wit:



[1] Department Advocate Office Case Analysis and Recommendation Memorandum, annexed to the Declaration of Gabriel P. Harvis dated January 29, 2018 ("Harvis Decl.") as Exhibit 1; Disposition of Charges, annexed to Harvis Decl. as Exhibit 2.



Such acts of dishonesty and theft, rendered more transgressive by Hugasian's position of public trust, are presumptively admissible. *Weinstein's Evidence Manual*, Student Edition, Tenth Edition 2015, § 12.03(3)(a): Attacking Character: Cross-Examining Witness About Specific Instances of Probative Conduct ("Acts such as forgery, perjury, and fraud are probative of untruthfulness, and are presumptively admissible under Rule 608(b). Other acts of dishonesty, of course, may also be probative of dishonesty."); *Redd v. New York State Div. of Parole*, 923 F. Supp. 2d 393, 403 (E.D.N.Y. 2013) ("[T]he Federal Rules of Evidence explicitly permit inquiry on cross-examination into any specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.") (internal quotation marks omitted); *United States v. Bravo,* 808 F.Supp. 311, 321–22 (S.D.N.Y. 1992) ("Rule 608 of the Federal Rules of Evidence allows impeachment of witnesses by evidence of specific instances of dishonesty regardless of whether there has been an official finding to that effect."); *Mischalski v. Ford Motor Co.*, 935 F. Supp. 203, 207 (E.D.N.Y. 1996) ("Evidence that a witness has made false statements is obviously a matter that tends to impugn a witness's credibility.").

There is evidence that Hugasian has committed additional acts of dishonesty:

> ➢ When testifying under oath, Hugasian has lied about the nature and extent of his overtime fraud, in an effort to bolster his own credibility and minimize the impeachment value of his prior acts;



➢ On October 24, 2014 (the date of plaintiff's arrest), after the District Attorney's office "released" Hugasian at 8:10 p.m. the defendant inflated his overtime request to obtain four hours and fifteen minutes of additional remuneration.[5]

Notably, as a result of his dishonest and venal conduct, Hugasian, a sworn public



official, was ███████████████████████████████████████████

████████████████. Defendant Moran, Hugasian's direct supervisor, ████████████

---

[4] *See* IAB Investigative Findings, Case No. ████████, annexed to Harvis Decl. as Exhibit 7. If it should please the Court, plaintiff does not seek to elicit evidence of ███████████████████ ███████████. However, plaintiff respectfully submits that cross-examination regarding Hugasian's ██████████████████████████ should be permitted as probative of the officer's credibility. Further, to the extent defendant Moran was aware of this allegation ████████, plaintiff submits that it is probative of Moran's state of mind as Hugasian's direct supervisor responsible for assigning him to a position of elevated trust and responsibility. Plaintiff also respectfully notes that Exhibit 7 was only first produced today, and that the underlying materials related to these ████ allegations remain outstanding.

[5] In the same manner, defendant Essig appears to have also inflated his own October 24th overtime request by as much as seven hours. In the case of both Essig and Hugasian, there is a discrepancy between the end of tour time listed in the officers' memo books and the (inflated) end of tour time reported on overtime compensation requests. *See Cordero*, 2017 WL 4685544 at *5. Plaintiff respectfully notes that every inflated overtime request amounts to criminal conduct and could be charged as a felony. *See* N.Y.P.L. § 175.10.

████████████████████████████████████████████████████████. [6] Instead, Moran left

Hugasian alone and unsupervised in the crucial "observation" post.

## A.    The Conduct is Presumptively Admissible Under Fed. R. Evid. 608(b)(1)

Trial courts in this circuit have broad discretion to allow or prohibit cross-

examination regarding specific acts of prior misconduct that bear on truthfulness. In

*Hynes v. Coughlin* the Second Circuit explained:

> With respect to attacks on, or bolstering of, a witness's
> credibility, Rule 608 gives the trial court discretion to permit
> cross-examination (but not extrinsic evidence) as to
> "[s]pecific instances of [the witness's] conduct" if those
> instances will be "probative of [the witness's character for]
> truthfulness or untruthfulness." Fed. R. Evid. 608(b). *See
> generally* 28 Charles A. Wright & Victor J. Gold, *Federal
> Practice and Procedure: Evidence* § 6117 (1993). Under this
> Rule, we have upheld, for example, cross-examination into
> an attorney's disbarment, *see United States v. Weichert,* 783
> F.2d 23, 25 (2d Cir.) *cert. denied,* 479 U.S. 831, 107 S.Ct.
> 117, 93 L.Ed.2d 64 (1986), into a witness's failure to
> disclose a prior arrest on his bar application, *see United States
> v. Schatzle,* 901 F.2d 252, 255–56 (2d Cir. 1990), and into
> a prior finding by an Immigration Judge that the witness's
> testimony in a deportation proceeding was not
> credible, *see United States v. Bagaric,* 706 F.2d 42, 65 (2d
> Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d
> 128 (1983); *see also United States v. Tomblin,* 46 F.3d 1369,
> 1389 (5th Cir. 1995) (upholding cross-examination into a

---

[6] *See* ████████████████████████, annexed to Harvis Decl. as Exhibit 3. Plaintiff does
not seek to introduce evidence of the ██████████████, except to elicit on cross-examination that
████████████████████████████████████████, to leave him essentially unsupervised and to
approve his overtime submissions without review.

> defendant's alleged acts of fraud, bribery, and embezzlement).

79 F.3d 285, 293–94 (2d Cir. 1996); *see Sabir v. Jowett*, 143 F. Supp. 2d 217, 218 (D. Conn. 2001) ("The first step in a 608(b) analysis is whether the specific conduct is probative of the witness' character for truthfulness or untruthfulness.") (collecting cases) (citations omitted).

In *Rosales v. Kelly*, as here, plaintiff sought "only to inquire into the underlying circumstances surrounding Williams's discipline for impeachment purposes under Rule 608(b)" and did not intend to "offer the disciplinary records themselves into evidence." 07 CV 10554 (LAP), 2011 WL 5873374, *2 (S.D.N.Y. Nov. 14, 2011). Under such circumstances, the *Rosales* court permitted cross-examination:

> Since the Court finds that the underlying circumstances of the disciplinary proceeding are probative of Williams's character for untruthfulness, Plaintiff's counsel may inquire into them on cross-examination. *See, e.g., [United States v.] Davis,* 183 F.3d [231,] 257 n.12 [3d Cir. 1999] ("To impugn [the witness's] credibility, the government properly can question [him] about misappropriating departmental gasoline for personal use and putting a false name in a gas log, and it may question [him] about lying to an Internal Affairs officer about ripping up an individual's subway pass."); *United States v. Nelson,* 365 F.Supp.2d 381, 389 (S.D.N.Y. 2005) ("Case law in this circuit indicates that questions [for Rule 608(b) impeachment purposes] that convey the fact of an adverse credibility finding against a witness in a previous [administrative proceeding] are permissible.").

*Id; see, e.g., United States v. Triumph Capital Grp.*, 237 Fed. App'x. 625, 630 (2d Cir. 2007) ("This Court has held that it can be appropriate to introduce false statements ... under Rule 608(b)(1) to shed light on a witness' credibility."); *United States v. Jones,* 900 F.2d 512, 520 (2d Cir. 1990) (witness could be cross-examined regarding false statements made on applications for employment, an apartment, a driver's license, a loan, and membership in an association); *United States v. Kozlovski,* 10 CR 58 (RRM), 2011 WL 4916915, *2 (E.D.N.Y. Oct. 14, 2011) (permitting cross-examination regarding submission of false time sheets to employer) (citation omitted); *United States v. Sperling,* 726 F.2d 69, 74–75 (2d Cir. 1984) (approving cross-examination regarding false credit card application).

Here, plaintiff respectfully submits that the conduct at issue falls squarely within the recognized ambit of Rule 608(b)(1) and cross-examination should be permitted. The specific prior acts of deceit occurred while the defendant was employed as a sworn government official and ███████████████████████████████, as well as proximate in time to the arrest. Indeed, the false statements at issue include those made in overtime paperwork submitted in connection with plaintiff's arrest and ██████ ███████████████. Critically, as the sole eyewitness offered to carry defendants' burden on the primary issue of probable cause, Hugasian's credibility is the linchpin of the trial.

Lastly, the thrust of the misconduct – attempting to obtain overtime under false pretenses – is identical to the conduct surrounding the instant dispute, supporting the application to allow cross-examination. *See Nelson*, 365 F. Supp. at 390:

> In evaluating the probity of specific instances of conduct, courts consider numerous factors, including "whether the testimony of the witness in question is crucial or unimportant, the extent to which the evidence is probative of truthfulness or untruthfulness, the extent to which the evidence is also probative of other relevant matters, the extent to which the circumstances surrounding the specific instances of conduct are similar to the circumstances surrounding the giving of the witness's testimony, [and] the nearness or remoteness in time of the specific instances to trial ...." John W. Strong, *McCormick on Evidence* § 41; *see also* Weinstein & Berger, *supra,* § 608.22[2][c][iv].

Plaintiff further respectfully submits that preclusion of the evidence tending to discredit Hugasian would result in grave prejudice to Mr. Cordero. With such a ruling, the jury would be left with the unfair impression that Hugasian was a credible witness with no history of dishonesty and deserving of the good faith naturally bestowed upon society's sworn law enforcement officers. *Cordero v. City of New York*, 2017 WL 4685544 at *2 (noting that "most jurors find officers more credible than persons accused of crimes").

## B.   Hugasian's Prior Conduct Bears on Moran's Supervisory Liability

The record reflects that defendant Moran, as the 83rd Precinct's SNEU sergeant and Hugasian's direct supervisor, was aware in October 2014 that ████████████

████████████████████████████████████████

████████████. Under these circumstances, plaintiff should be permitted to elicit testimony on cross-examination of these basic facts in support of his supervisory liability claim and to establish the supervisor's *mens rea*. *Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) ("A plaintiff pursuing a theory of gross negligence must prove that a supervisor's neglect caused his subordinate to violate the plaintiff's rights in order to succeed on her claim.") (citation omitted).

Plaintiff respectfully submits that he should be permitted to advance the theory that Moran's decision to assign Hugasian to the SNEU observation post was grossly negligent and that Hugasian was not sufficiently reliable to hold that position. By the same token, plaintiff should be permitted to argue that Moran's failure to follow SNEU protocols requiring supervisors to remain in the field, and his tolerance of overtime abuses by team-members amounts to grossly negligent supervision, especially given his knowledge of Hugasian's history. *See Cordero*, 2017 WL 4685544 at *11 ("The jury may find Lieutenant Moran complicit with abuse of the city's overtime policy.").

## C.    Plaintiff Will Not Offer Evidence of Discipline or Argue Propensity

Consistent with the Court's opinion denying summary judgment and Rule 608, plaintiff does not intend to offer evidence that Hugasian was disciplined (other than, as described above, ████████████████████████████████████████

███████████████████████). Plaintiff also agrees not to offer any evidence of Hugasian's prior bad acts for the purposes of arguing propensity.

## POINT II

### PLAINTIFF SHOULD BE PERMITTED TO REQUEST A SPECIFIC DOLLAR AMOUNT IN SUMMATION

Plaintiff respectfully submits that the particular facts and procedural history of this case favor exercise of the Court's discretion to permit plaintiff to suggest a specific dollar amount for compensatory and punitive damages during counsel's summation.

The Second Circuit has no rule prohibiting the request for a specific pain and suffering dollar amount, instead adopting a "flexible approach" that vests the trial court with discretion over whether to permit such argument. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997); *see Thomas v. Kelly*, 903 F.Supp.2d 237, 265 (S.D.N.Y. 2012) ("The Court also rejects the defendants' argument that the suggestion by plaintiff's counsel in his closing argument that the jury should award Thomas a specific dollar amount resulted in an excessive award. As the Court just determined, the jury's award was adequately supported by the record."); *Thomas v. Medco*, 95 CV 8401 (JES) (MHD), 1998 WL 542321, *15 (S.D.N.Y. Aug. 26, 1998) ("[W]e also conclude that the suggestion by plaintiff's attorney that [plaintiff] be remunerated in the sum of $300,000 for her emotional injuries did not unfairly influence the jury... [t]he Circuit has not...ruled that it is an error to permit such recommendations"); *see also, e.g.,*

*Edwards v. City of New York*, 08 CV 2199 (TLM), 2011 WL 2748665, *2 (E.D.N.Y. July 13, 2011) (permitting the suggestion of a specific dollar amount in closing in § 1983 action).

Here, plaintiff submits that he will be prejudiced if he is prohibited from mentioning a specific amount in closing. First, plaintiff provided a detailed computation of damages supporting the proposed dollar amounts for compensatory and punitive damages during discovery, at defendants' request. *See* Letter from B. Fett to A. Booth dated March 14, 2016, annexed to Harvis Decl. as Exhibit 4. Second, defendants served a Rule 68 offer of judgment for $██████ in March 2016 and it would be unfair for plaintiff to be penalized if the jury awards a smaller amount, without being afforded the opportunity to suggest a higher sum, especially where, as here, results in comparable cases would support plaintiff's proposed awards. Third, there are no economic damages claimed in this case to provide a guidepost to the jury, and if plaintiff's counsel is prohibited from arguing for a specific award, the jury may award an unreasonably low amount.

Accordingly, plaintiff respectfully requests permission to request a specific amount from the jury as described in his computation of damages.

## POINT III

## DEFENDANTS SHOULD BE PRECLUDED FROM BOLSTERING DEFENDANT HUGASIAN

At his deposition, defendant Hugasian testified to aspects of his background that defendants may offer to bolster his credibility and garner sympathy from the jury. Specifically, Hugasian testified to ███████████; an incident in which █ ████████████████████████████; and that he ████████ ████████████████. Given that these facts have no relevance to the instant dispute, and would merely serve to bolster Hugasian's testimony, plaintiff respectfully submits that the evidence is improper and should be excluded. *See* Fed. R. Evid. 404(a).

## POINT IV

## DEFENDANTS SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF ████ ████████████████

Matthew Niños, identified as the alleged "buyer" in the drug transaction defendant Hugasian claims to have observed, does not appear on either party's witness list and will testify as a witness at trial. However, based upon their arguments in the summary judgment phase, plaintiff expects that defendants may attempt to somehow offer evidence that ████████████████████████, or that



. Such statements are factually inaccurate, and the information is irrelevant and inadmissible.

First, ██████████████████ is inadmissible hearsay. Second, █████ ████ is irrelevant, as it offers no facts that would tend to prove or disprove plaintiff's guilt, or any that could provide probable cause for plaintiff's arrest. Indeed, ██████████████ ██████████████████████. The ████████████████ is similarly irrelevant, and reflects █████████████ ████. *See* ████████████████, annexed to Harvis Decl. as Exhibit 5; ██████████, annexed to Harvis Decl. as Exhibit 6, p. 15, ln. 20-25.

Further, admission of the hearsay evidence would be *highly prejudicial* to Mr. Cordero, as it would ██████████████████████████. Given that no evidence other than Hugasian's disputed account puts Mr. Cordero on the sidewalk with Mr. Niños, and that the credible evidence including video and witness accounts tend to exonerate Mr. Cordero, it would be unfair to present Mr. Niños and Mr. Cordero to the jury as associated based on unreliable hearsay evidence.

## POINT V

## DEFENDANTS LACK ANY GOOD FAITH
## BASIS TO ARGUE SPOLIATION

J&C Minimarket, the location of plaintiff's arrest and his place of employment, is equipped with surveillance video. The officers, who were theoretically investigating

plaintiff's sale of drugs on the premises, admittedly never reviewed or attempted to review the video, nor did they or their attorneys secure, subpoena or otherwise attempt to obtain the video for use in either the criminal prosecution or the instant civil litigation.

Plaintiff, a non-native English speaker who works in the Minimarket as a clerk and has no possession, custody or control over the surveillance equipment, nevertheless went to great lengths to dutifully preserve and produce video footage related to the events. As detailed in two affidavits demanded by defendants during discovery, Mr. Cordero arranged to have his boss, trial witness Fausto Tineo (J&C's owner), replay the footage of the officers entering the bodega while plaintiff recorded it using an iPad. That footage was then provided to plaintiff's counsel, who produced it to defendants. Additionally, plaintiff also preserved and produced a brief video clip taken by Mr. Tineo that depicts Mr. Cordero being placed in a police vehicle. It is by virtue of Mr. Cordero's diligence alone that this evidence will be available to the trier of fact.

Despite plaintiff's diligence and defendants' own manifest inaction, defendants have nevertheless attempted to mount the argument that plaintiff somehow "spoliated" the footage. Such argument is frivolous.

As sworn by both plaintiff and his boss, plaintiff had no access to or custody of the video footage, and thus no duty to preserve it. In any event, Mr. Cordero did capture

what a reasonable person in his position would have been believed was the relevant portion, i.e. when officers entered the store and arrested him. Furthermore, the footage exonerates plaintiff, inasmuch as it depicts him at work in a busy bodega such that it would be essentially impossible for him to have exited the store to sell drugs in broad daylight on the sidewalk. The footage also dispels any argument that the officers were legitimately engaged in the investigation of a drug sale.

Accordingly, defendants lack a good faith basis to argue spoliation, or to attempt to create a further record on the issue at trial.

## POINT VI

### DEFENDANTS SHOULD BE PRECLUDED FROM ARGUING THAT POSSESSION OF CURRENCY IS EVIDENCE OF CRIMINALITY

Beyond defendant Hugasian's questionable observation (which was insufficient to allow defendants Rubin and Essig to initially identify plaintiff) there is no evidence to suggest that a drug sale took place in front of J&C Minimarket, let alone one involving Hector Cordero. Yet defendants cite to plaintiff's possession of approximately $580 in cash as somehow indicative of illegality. However, the argument defies logic. *See United States v. Cepeda,* 768 F.2d 1515, 1518 (2d Cir. 1985) (Reversing a conspiracy conviction: "We do not think $1,151, even in an apartment at West 93rd Street, indicative of very much[.]").

Defendants should not be permitted to give the jury the impression that the law treats the mere possession of currency as *per se* evidence of criminality, and certainly not an amount in the range of $580. Accordingly, plaintiff respectfully requests that defendants be prohibited from arguing that Mr. Cordero's possession of cash provided (or offered any measure of) probable cause to arrest him for a drug sale.

<u>POINT VII</u>

### THE COURT SHOULD PRECLUDE ANY MENTION OF MR. CORDERO'S ON-DUTY SHOOTING WHEN HE WAS A POLICE OFFICER IN THE DOMINICAN REPUBLIC IN 1983

At his deposition, Mr. Cordero testified that, in 1983 as a police officer in the Dominican Republic, he shot a robbery suspect who survived. While the matter was being investigated by authorities, Mr. Cordero appears to have been detained before ultimately being exonerated. Aside from a few questions posed to plaintiff at his deposition about the event of 35 years ago, defendants took no discovery on the matter and thus lack any good faith basis for examination or any credible argument for relevance.[7]

In their *in limine* motions, defendants take the position that this remote and

---

[7] The Court took a dim view of defendants' request for these records during discovery. *See* DE #72, p. 2 ("[I]f defendants wish to seek any of plaintiff's criminal records from the Dominican Republic, they shall brief this request, including the procedure they intend to use to obtain such records and the reasons for such discovery, with supporting authority."). No brief was submitted.

irrelevant event should be brought before the jury as punishment should plaintiff truthfully mention his honorable career as a police officer. This is unfair. Plaintiff's background is generally relevant, while the 35-year-old event is not, and the issues should be considered independently.

## POINT VIII

### DEFENDANTS SHOULD BE PRECLUDED FROM DESCRIBING THE AREA OF J&C MINIMARKET AS DRUG-PRONE, OR REFERRING TO THE SCURGE OF DRUGS OR THE DANGERS OF POLICING

The individual defendants each testified that they had no reason to believe that J&C Minimarket or Hector Cordero (or anyone else at the Minimarket) had any involvement in drug dealing, and that they had made no prior arrests at the location. Nevertheless, plaintiff expects that defendants will generally testify that the area "around" J&C is "drug-prone," that SNEU operations enhance public safety, and that policing is dangerous. This testimony is highly prejudicial, unfairly casts plaintiff as a criminal and impermissibly bolsters the officers' credibility. Plaintiff requests that all such testimony be precluded.

-17-

## POINT IX

## RELEVANT SECTIONS OF THE PATROL GUIDE SHOULD BE ADMITTED

"In civil rights actions brought to enforce rights created by the Constitution and § 1983, the contents of police patrol guides or other internal procedural guidelines have been regarded as relevant to a determination of whether a violation of such rights occurred." *Handschu v. Special Services Div.*, 273 F.Supp.2d 327, 347 (S.D.N.Y. 2003) (collecting cases); *see also Sorensen v. City of New York*, 98 CV 3356 (HB), 2000 WL 1528282, *1, 16 (S.D.N.Y. Oct. 16, 2000) (NYPD Patrol Guide admitted into evidence in jury trial of § 1983 claims including false arrest and unconstitutional strip search); *Cerbelli v. City of New York*, 99-CV-6846 (ARR), 2008 WL 4449634, *23 (E.D.N.Y. Oct. 1, 2008) ("To determine whether a defendant acted with reasonable care, the court may turn toward departmental guidelines, such as the Patrol Guide, to discern the relevant duty of care required from a police officer.") (citation omitted).

In defiance of the record, defendants argue that there is "no evidence of Patrol Guide violations" on these facts. This is simply false. Indeed, this case presents broad evidence of serious deviation from accepted norms of policing, including violations of multiple Patrol Guide sections and the absence of basic recordkeeping, along with evidence of outright fraud in overtime practices. It is appropriate for the jury to refer to the NYPD's own guidelines and recommendations in analyzing reasonableness under

-18-

these circumstances.[8] *Handschu*, 273 F.Supp.2d at 347.

<u>CONCLUSION</u>

For the foregoing reasons, plaintiff respectfully requests that the Court grant the instant motions in their entirety, and for such other and further relief as the Court deems just and proper.

Dated:        January 30, 2018
              New York, New York


              HARVIS & FETT LLP


              *Gabriel P. Harvis*
              _____
              Gabriel P. Harvis
              Baree N. Fett
              305 Broadway, 14th Floor
              New York, New York 10007
              (212) 323-6880
              gharvis@civilrights.nyc

              *Attorneys for plaintiff*

---

[8] Plaintiff will not seek to equate a Patrol Guide violation with violation of the U.S. Constitution.