

**ZACHARY W. CARTER**
*Corporation Counsel*

**THE CITY OF NEW YORK**
## LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

PHILIP R. DePAUL
*Senior Counsel*
Phone: (212) 356-2413
Fax: (212) 356-3509
pdepaul@law.nyc.gov

February 23, 2018

**BY ECF**
Honorable Jack B. Weinstein
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    Hector Cordero v. City of New York, et al.
               15 CV 3436 (JBW) (CLP)

Your Honor:

      I am a Senior Counsel in the Office of Zachary W. Carter, Corporation Counsel of the City of New York, and one of the attorneys assigned to try the above-referenced matter. Defendants write regarding several issues related to the ongoing trial in this matter.

**A.    Motion for Judgment as a Matter of Law**

      Defendants respectfully request that the Court grant judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Judgment as a matter of law is warranted after "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a).

      1.    *Malicious Prosecution Against Hugasian*

      Plaintiff did not meet his burden with respect to his malicious prosecution claim against Officer Hugasian. "The elements of a malicious prosecution claim in New York are: (1) the defendant initiated a prosecution against the plaintiff, (2) the defendant lacked probable cause to believe the proceeding could succeed, (3) the defendant acted with malice, and (4) the prosecution was terminated in the plaintiffs favor." Negron v. Wesolowski, 536 F. App'x 151, 153 (2d Cir. 2013). There is no evidence in the trial record at trial by which the jury could conclude that the prosecution terminated in plaintiff's favor.

      To satisfy the "favorable termination" element, a plaintiff must demonstrate that the final disposition of the criminal proceedings involved the merits and indicated that he was innocent of the criminal charges. Gonzalez v. City of Schenectady, 728 F.3d 149, 162 (2d Cir. 2013) (citing Murphy v. Lynn, 118 F.3d 938, 948) (2d Cir. 1997)); Fulton v. Robinson, 289 F.3d

188, 196 (2d Cir. 2002). To determine whether the disposition involved the merits, courts look to the nature and circumstances of the termination. See, e.g., Murphy, 118 F.3d at 27-29.

Here, the only evidence in the record about the termination of the underlying prosecution is plaintiff's own testimony. Plaintiff testified that "when the part of the video was shown to the lady prosecutor, then I was sent to the judge" and "the judge dismissed the case." (Trial Tr., 380:2-20.) This testimony does not indicate why the charges were dismissed, let alone that such dismissal was indicative of innocence. Moreover, as a factual matter, to the extent that plaintiff was referring to the J & C Minimarket surveillance video in this testimony, (Pl.'s Ex. 62), defendants submit that it is not indicative of anything, let alone plaintiff's innocence. Thus, plaintiff has failed to meet this element.

    2.   *Failure to Intervene Against Detective Essig*

Defendants respectfully submit that no reasonable jury could find in plaintiff's favor with respect to his failure to intervene claim against Detective Essig. "A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to [a constitutional violation], and may be held liable for his failure to do so if he observes the [constitutional violation] and has sufficient time to act to prevent it." Figueroa v. Mazza, 825 F.3d 89, 106 (2d Cir. 2016). Even assuming that a strip search occurred—which it did not—there is no evidence to support that Detective Essig was present for it. By plaintiff's own testimony, the alleged strip search was conducted by one officer. (Trial Tr., at 403:10-12.) There were no other officers in the cell, and plaintiff didn't see any other officers outside the cell. (Trial Tr., at 403:10-12.) Thus, this claim against Detective Essig should be dismissed as a matter of law.

    3.   *Supervisory Liability Against Lieutenant Moran*

As an initial matter, defendants respectfully submit that, at the *in limine* hearing held on February 12, 2018, the Court ruled that plaintiff's claim against Lieutenant Moran is failure to intervene, not supervisory liability. (Hearing Tr., 5:17-6:3.) With respect to any failure to intervene claim against Lieutenant Moran, there is no evidence that Lieutenant Moran observed or failed to intervene in any constitutional violation.

Lieutenant Moran did not have a reasonable opportunity to intervene in any alleged constitutional violations committed by Officer Hugasian with respect to plaintiff. By his account, Lieutenant Moran was at the 83 Precinct at the time of plaintiff's arrest. (Trial Tr., 275:10-15.) Moreover, Lieutenant Moran, who verified plaintiff's arrest, was entitled to rely on the information provided to him by Officer Hugasian. United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2011) (law enforcement officers "act reasonably in relying on information received by other law enforcement officials.") Similarly, Lieutenant Moran could not have intervened with respect to Detective Rubin's alleged unlawful strip search, since Lieutenant Moran testified that no member of his team requested to perform a strip search on plaintiff and, therefore, he could not know about it. (Trial Tr., at 321:21-23.) Thus, this claim should be dismissed.

Further, any supervisory liability claim would also fail. Since there is no evidence that Lieutenant Moran was directly involved in any constitutional violation, plaintiff had the burden to prove that Lieutenant: (1) failed to remedy the constitutional violation after learning of it through a report or appeal; (2) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (3) was grossly negligent in supervising subordinates who caused the violation; or (4) exhibited deliberate indifference to the rights of

citizens by failing to act on information indicating that unconstitutional acts were occurring. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). As with plaintiff's failure to intervene claim, there is no evidence in the record by which the jury could find for plaintiff on this claim, and, as such, it should be dismissed.

4. *All Remaining Claims Should Also Be Dismissed*

Finally, because no reasonable jury could find for plaintiff on any claim, defendants request that judgment as a matter of law be granted in their favor.

**B.   Draft Jury Instructions**

Defendants respectfully submit the below substantive comments on the Draft Jury Instructions and Verdict Sheet. Any stylistic and/or grammatical errors will be raised orally at today's Charging Conference.

1. *False Arrest:*

Defendants respectfully request that the Court instruct the jury that a police officer's subjective motivations for making an arrest are not relevant to the probable cause inquiry. See, e.g., Devenpeck v. Alford, 543 U. S. 146, 153 (2004); Whren v. United States, 517 U.S. 806, 812-813 (1996); Maryland v. Macon, 472 U.S. 463, 470-71 (1985). The need for a clear instruction on this could not be more substantial than in this case, since plaintiff's presentation was almost entirely focused on Officer Hugasian's—and, indeed, *all* of the police officers'—intent to obtain overtime by arresting plaintiff.

Thus, and similar to the Court's Unlawful Strip Search Charge (Draft Instructions, at 11), defendants request that the last sentence on the second paragraph on the False Arrest Charge (Draft Instructions, at 7), be replaced with:

> The test is one of objective information. A police officer's subjective motivations in making an arrest are not relevant.

2. *Denial of the Right to a Fair Trial:*

a.   Defendants also respectfully request the Court include a statement that plaintiff must establish that defendant Hugasian acted intentionally, not just recklessly, for his denial of the right to fair trial claim. See Fappiano v. City of New York, 640 Fed. App'x 115, 118 (2d Cir. 2016) (summary order) (recognizing, in the context of a Brady-based fair trial claim, that "[w]e have never held that anything less than an intentional Brady violation establishes a § 1983 due process claim for damages, however, and we decline to do so here.")

Thus, the following language should be included at the end of the second paragraph of the charge on that claim (Draft Instructions, at 10-11):

> With respect to plaintiff's denial of the right to a fair trial claim, it is not enough if the plaintiff has established that the defendants acted or recklessly. Rather, with respect to this claim, the plaintiff must prove that defendant Hugasian acted intentionally.

b.   Given plaintiff's focus on police paperwork at this trial, defendants request that the Court instruct the jury that mistakes in paperwork are not a basis for a claim of denial of the right to a fair trial, consistent with this Court's instructions in Scott v. City of New York, 11

CV 3846 (JBW) (E.D.N.Y.). Thus, the following language should be included at the end of the fourth paragraph of the charge on this claim:

> A mere mistake, or mistakes, by a police officer in making a written record is not a basis for a constitutional violation.

3. *Physical Injury*

Defendants respectfully submit that there is no evidence in the record to support a compensatory damages for physical injuries, and thus, any reference to physical injuries should be removed from the Jury Instructions. (See, e.g., Draft Instructions, at 14, 15)

**C.  Spoliation Sanctions / Adverse Interference**

Defendants are entitled to an adverse inference with respect to the surveillance video. A party seeking an adverse inference instruction must establish three things: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (citing Byrnie v. Town of Cromwell, 243 F.3d 93, 107-12 (2d Cir. 2001)).

Here, all three elements are met. First, plaintiff had control over the video. Plaintiff has the keys to the J & C Minimarket, and opens it by himself. (Trial Tr., 353:14-21.) Plaintiff likewise operates the surveillance system. (Trial Tr., 353:25-354:6.) Second, on October 25, 2014, when the video still existed, plaintiff knew that he was being accused of selling narcotics *outside* of the store. (Trial Tr., 402:24-403:2.) Yet, plaintiff decided to record the portion of the video that reflected his arrest, and allowed the rest of it to be deleted. (Pl.'s Ex. 62; Trial Tr., 389:15-19.) Third, the relevance is clear: whether plaintiff left the store on October 24, 2014—which would have been depicted in the surveillance video that plaintiff allowed to be deleted—is one of the critical facts at issue in this trial.

As such, defendants respectfully submit that the Court inform the jury that if they find that plaintiff failed to produce relevant video surveillance footage, the jury may, but is not required, to infer this evidence would have been unfavorable to plaintiff.

**D.  Special Interrogatory for Qualified Immunity**

Defendants respectfully submit that they are entitled to qualified immunity with respect to all of plaintiff's claims against them, and therefore respectfully request that the Court dismiss this case on this basis.

More specifically, however, defendants submit that they are entitled to have a special interrogatory submitted to the jury with respect to all claims against defendant Hugasian. See Stephenson v. Doe, 332 F.3d 68, 81 (2003) ("We believe that use of special interrogatories in this case resolves the difficulty of requiring the jury to decide what the facts were that the officer faced or perceived and requiring the court to make the ultimate legal determination of whether qualified immunity attaches on those facts.")(internal quotation marks omitted). Given plaintiff's own testimony that he may have exited the J & C Minimarket on October 24, 2014 (Trial Tr., 392:12-16), the following factual question should be asked of the jury:

Question 18:

Did defendant Hugasian reasonably believe, even if mistaken, that he witnessed plaintiff sell crack on October 24, 2014?

YES _____    NO _____

Defendants thank the Court for its time and consideration of this matter.

Respectfully submitted,

/s/

Philip R. DePaul
Senior Counsel
Special Federal Litigation Division

cc:   Gabriel P. Harvis, Esq., *Attorney for Plaintiff* (by ECF)
      Baree N. Fett, Esq., *Attorney for Plaintiff* (by ECF)