Docket No. 15 CV 3436 (JBW)(CLP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HECTOR CORDERO,

Plaintiff,

- against -

THE CITY OF NEW YORK, Police Officer HUGO
HUGASIAN, Shield No. 10228; Lieutenant
CHRISTOPHER MORAN; Police Officer PETER
RUBIN, Shield No. 00934; and Police Officer JOHN
ESSIG, Shield No. 08667, individually and in their
official capacity as New York City Police Officers,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A NEW TRIAL

### ZARCHARY W. CARTER
Corporation Counsel of the City of New York

*Attorney for Defendants City of New York,
Hugo Hugasian, Christopher Moran, Peter
Rubin and John Essig*
100 Church Street
New York, New York  10007

Of Counsel:  Philip R. DePaul
Brian Francolla

Tel:  (212) 356-2413 / 3527

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

PROCEDURAL HISTORY.................................................................................... 2

FED. R. CIV. P. 59 STANDARD FOR NEW TRIAL.................................................. 5

ARGUMENT ....................................................................................................... 6

      POINT I

            PLAINTIFF'S MOTION FOR A NEW TRIAL SHOULD
            BE DENIED.....................................................................................6

CONCLUSION...................................................................................................... 9

## PRELIMINARY STATEMENT

Over the course of a four-day trial, a jury of 10 people evaluated evidence about plaintiff's arrest for selling crack on the street on October 24, 2014.   Plaintiff's counsel forcefully pressed the argument—in the courtroom and out of it—that the arrest was not supported by probable cause, but by the defendant officers' motivation for overtime pay.   After exhaustively questioning nearly every NYPD defendant and non-party witness about overtime, the jury rejected plaintiff's counsel's theory.   The jury concluded that plaintiff's arrest was lawful, and specifically *not* motivated by overtime. (Trial Transcript ("Trial Tr."), at 557:22-558:10, 561:9-11.)

Plaintiff now asserts that the jury's complete verdict against him should be thrown out, and a new trial ordered.   In support, plaintiff claims that he was "effectively prohibited" from cross-examining Police Officer Hugo Hugasian about facts underlying disciplinary charges brought against him a decade ago. (Plaintiff's Memorandum in Support of his Motion for a New Trial Pursuant to Rule 59 dated April 6, 2018, ECF No. 174, ("Pl.'s Mem.") at 8.)   To be clear, plaintiff's motion for a new trial has nothing to do with the evidence related to the events of October 24, 2014.   This is not at all surprising; at every turn, plaintiff's counsel has tried to make this case about everything but his client's arrest.

The jury's thoughtful verdict should not be disturbed just because plaintiff's counsel would like to question Officer Hugasian further about a decade-old disciplinary incident. First, the entire premise of plaintiff's motion is incorrect: the Court *did not* preclude plaintiff from asking questions about the events underlying Officer Hugasian's discipline.   Second, even if the Court's ruling could be deemed error, the jury's verdict was supported by ample evidence and was not a miscarriage of justice.   Plaintiff's motion for a new trial should be denied.

## PROCEDURAL HISTORY

In order to illustrate the flaw in plaintiff's argument for a new trial, it is important to review the context of the Court's rulings on Officer Hugasian's discipline.

On January 30, 2018, plaintiff moved *in limine* to admit certain facts about Officer Hugasian's alleged misconduct. (ECF No. 150.)  Plaintiff's motion listed "multiple acts of untruthfulness" to which, according to plaintiff, defendant Hugasian had "admitted and pled guilty." (ECF No. 150, at 2.)  Plaintiff also asserted that Officer Hugasian "committed additional acts of dishonesty." (ECF No. 150, at 3-4.)  Plaintiff argued that questioning about these facts was permitted under Federal Rule of Evidence 608(b)(1), which allows for cross-examination about specific instances of conduct "if they are probative of the character for truthfulness or untruthfulness of  . . . the witness." FED. R. CIV. P. 608(b)(1).

Defendants opposed, explaining why plaintiff's motion about Officer Hugasian's discipline ignored the context of what had actually occurred—much like plaintiff's present motion.  (ECF No. 152, at 1-6.)  But, even so, at the *in limine* hearing held on February 12, 2018, the Court ruled *in plaintiff's favor*.  The Court permitted questioning about "whether [Hugasian] did the act [of overtime abuse]." (Hearing Transcript ("Hearing Tr."), at 7:17-24.) The Court also stated how the questioning on this topic would proceed at trial: "Did you, on such-and-such a date, with respect to overtime, do such-and-such, and you are bound by whatever he says. And that's the end of it." (Hearing Tr., at 7:17-24.)

At trial, there was a dispute between the parties about the scope of the Court's *in limine* ruling on this issue.  Defendants' understanding was that plaintiff was limited to a single question, encompassing all of the incidents underlying Officer Hugasian's discipline. (Trial Tr., at 32:7-10; 34:18-25.)  Plaintiff's understanding was that he would be permitted to ask separate questions about each incident underlying Officer Hugasian's discipline; in other words, one

2

question for each date of the alleged misconduct. (Trial Tr., at 33:7-17.)   After a lengthy colloquy (Trial Tr., at 30:8-36:9), the Court agreed with plaintiff:

> MR. HARVIS: So one per date?
> THE COURT: That's right.
> MR. HARVIS: Okay.

(Trial Tr., at 36:6-8.)

After a recess, the Court and counsel had a different, but related discussion. Consistent with Rule 608, the Court gave plaintiff permission to question Officer Hugasian about specific incidents of alleged misconduct that underlay his discipline, but did not allow the plaintiff to elicit the discipline itself.   See Cordero v. City of New York, 282 F. Supp. 3d 549, 560 (E.D.N.Y. 2017).   In defendants' view, however, admitting the underlying facts would be misleading and prejudicial without also admitting the discipline. So, defendants requested permission to elicit that Officer Hugasian was disciplined by NYPD for the alleged misconduct on which plaintiff was allowed to cross-examine. (Trial Tr., at 36:15-21.)

This information was necessary to rebut plaintiff's theory that Officer Hugasian falsely arrested the plaintiff for the sole purpose of obtaining overtime pay. (Trial Tr., at 38:23-39:3.)  Put differently, because Officer Hugasian had been disciplined for overtime in the past, he was less likely to risk severe discipline again by committing overtime abuse with respect to plaintiff's arrest.  (Trial Tr., at 38:23-39:3.)  The Court agreed with defendants and permitted a *single* question about discipline. (Trial Tr., at 39:16-19.)

The admission of Officer Hugasian's discipline did not upset the Court's previous ruling in plaintiff's favor.  Plaintiff was still allowed to cross-examine Officer Hugasian on each specific incident underlying the discipline, with one question for each date of the alleged misconduct.  (Trial Tr., at 36:6-9.)  According to plaintiff's counsel, he was presumably prepared to do that since "he expected to cross-examine Hugasian regarding each predicate act of

dishonesty underlying the overtime scheme . . ." and had drafted 15 separate questions on this topic. (Pl.'s Mem. at 7.)

Plaintiff's counsel asked the following question when cross-examination resumed:

> Q:     On four occasions between May 4, 2007 and May 4, 2008, you submitted a request for overtime compensation in cash for overtime shifts you did not perform totaling approximately 21 hours and 10 minutes and also caused false entries to be made in department records, is that correct?

(Trial Tr., at 41:14-18.)  Because plaintiff's counsel improperly included the disciplinary charge of causing "false entries to be made in department records" in his question, the Court, *sua sponte*, struck the question. (Trial Tr., at 41:19.)  On his second attempt, plaintiff's counsel then successfully elicited the testimony he sought:

> Q:     On four occasions between May 4, 2007 and May 4, 2008, you submitted a request for overtime compensation in cash for overtime shifts you did not perform totaling approximately 21 hours and 10 minutes. Is that correct?
> A:     I don't note [*sic*] exact time but, yes, approximately ten years ago, yes.

(Trial Tr., at 41:21-42:2.)  Since Officer Hugasian's answer went beyond the "yes" or "no" that the Court wanted, and stated that the overtime requests occurred "approximately ten years ago," the Court then struck that reference from Officer Hugasian's answer. (Trial Tr., at 41:21-42:2.) ("Don't add the time. Strike the time.")  There was no additional comment from the Court or objection from defendants.  This, however, was the end of plaintiff's counsel's questions on this topic.   Instead of asking the additional questions he had presumably prepared or seeking additional clarification from the Court, plaintiff's counsel moved on to a different area.  (Trial Tr., at 41:11-42:4.)

In the above context, it is clear that it was plaintiff's counsel's choice to change topics after asking one question about Officer Hugasian's decade-old disciplinary incident. In his bid for a new trial, plaintiff's counsel attempts to shift the responsibility for his decision by arguing that the Court committed error. The Court should reject plaintiff's argument and deny plaintiff's motion for a new trial.

## FED. R. CIV. P. 59 STANDARD FOR NEW TRIAL

Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure "[t]he court may . . . grant a new trial . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." FED. R. CIV. P. 59(a)(1)(A).

In the Second Circuit, a motion for a new trial "ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Lightfoot v. Union Carbide Corp., 110 F.3d 898, 911 (2d Cir. 1997) (internal alterations and quotation marks omitted). A serious error or a miscarriage of justice occurs when "the verdict is against the weight of the evidence," or when "for the reasons stated the trial was not fair to the moving party." Mallis v. Bankers Trust Co., 717 F.2d 683, 691 (2d Cir. 1983). However, "the court should only grant a motion for a new trial when the jury's verdict is *egregious*." DLC Mgmt. Corp., 163 F.3d at 134 (internal quotation marks and citation omitted) (emphasis added.)

Where a motion for a new trial is based on an evidentiary ruling, the moving party must establish that the ruling "was a clear abuse of discretion and was . . . clearly prejudicial to the outcome of the trial." Luciano v. Olsten Corp., 110 F.3d 210, 217 (2d Cir. 1997). But an error in admitting or excluding evidence is not grounds for granting a new trial unless the error affects a party's "substantial rights." FED. R. CIV. P. 61. A substantial right is implicated if there is a "likelihood that the error affected the outcome of the case." Tesser v. Bd. of Educ., 370 F.3d

5

314, 319 (2d Cir. 2004) (citation and internal quotation marks omitted).  Accordingly, even if the

evidence that should have admitted was excluded erroneously, a new trial should not be granted

unless plaintiff demonstrates the "it is likely that in some material respect the [jury's] judgment

was swayed by the error." Id. (citation and internal quotation marks omitted).  Because plaintiff

cannot do this, his motion for a new trial should be denied.

**ARGUMENT**

**POINT I**

**PLAINTIFF'S MOTION FOR A NEW TRIAL**
**SHOULD BE DENIED**

Plaintiff is not entitled to a new trial.  Plaintiff's counsel was allowed to cross-

examine about each date underlying Officer Hugasian's disciplinary history, and it was

plaintiff's counsel's decision—not this Court's—to discontinue his inquiry about this after

asking one question instead of the 15 questions he claims to have drafted.  But even if the Court

could be deemed to have committed error, it was harmless because the jury's verdict was

supported by ample evidence.

First, the Court did not commit an evidentiary error.  The parties extensively

briefed the issues concerning the admission of facts underlying Officer Hugasian's decade-old

disciplinary charges *in limine*. (ECF Nos. 150, 152.)  At the *in limine* hearing on February 12,

2018, the Court found in plaintiff's favor.  Consistent with Federal Rule of Evidence 608(b), the

Court permitted plaintiff to cross-examine Officer Hugasian about "whether [Hugasian] did the

act [of overtime abuse]" in the following manner: "Did you, on such-and-such a date, with

respect to overtime, do such-and-such, and you are bound by whatever her says. And that's the

end of it." (Hearing Tr., at 7:17-24.) Cf. FED. R. CIV. P. 608(b)(1) ("the court may, on cross-

examination, allow [specific instances of conduct] to be inquired into if they are probative of the

6

character for truthfulness or untruthfulness of . . . the witness."); see also Redd v. New York State Div. of Parole, 923 F. Supp. 2d 393, 403 (E.D.N.Y. 2013) (recognizing that Federal Rule of Evidence 608(b) permits "inquiry on cross-examination into . . . specific instances of a witness's conduct in order to attack . . . the witness's character for truthfulness.")

At trial, after a dispute between the parties about the scope of the Court's *in limine* ruling on this issue, the Court again ruled for plaintiff.  The Court allowed plaintiff to cross-examine Officer Hugasian about each date of the alleged overtime abuse.  (Trial Tr., at 36:6-7) ("MR. HARVIS: So one per date? THE COURT: That's right.")  Presumably, plaintiff's counsel was prepared to do this since "he expected to cross-examine Hugasian regarding each predicate act of dishonesty underlying the overtime scheme . . . ." and had drafted 15 questions to that end.  (Pl.'s Mem. at 7.)  But, for some reason he has not explained, plaintiff's counsel did not.  After asking a single question on this topic that elicited the testimony he sought, plaintiff's counsel moved on to a different area.  (Trial Tr., at 41:11-42:4.)  If any error was committed, it was plaintiff's counsel's error.  That does not entitle plaintiff to a new trial, and his motion should be denied on that basis.

Second, even if the Court's ruling could somehow be deemed error, the outcome of the trial was not a miscarriage of justice.  Rather, it was based upon a careful evaluation of the relevant evidence about the actual arrest. Even the jury's responses to both of the special interrogatories reveal how thoughtfully they evaluated the evidence about plaintiff's arrest. (Trial Tr., at 559:8-16.) Any more questioning about Officer Hugasian's decade-old disciplinary incident would not have affected jury's determination that plaintiff's constitutional rights were not violated on October 24, 2014. See Tesser, 370 F.3d at 319.

Plaintiff tries to claim that the verdict was faulty by asserting that it was solely the product of Officer Hugasian's testimony. (See Pl.'s Mot. at 1)(describing Hugasian as "the sole witness against plaintiff.")  But this argument willfully ignores the host of other evidence the jury heard that supported plaintiff's arrest for selling crack on the street on October 24, 2014. For example, the jury heard that Matthew Ninos—the person who was observed purchasing crack from plaintiff—was also arrested on October 24, 2014, that two bags of crack were recovered from his person, and that Ninos later pleaded guilty to possession. (Trial Tr., at 134:6-11; 329:8-330:5.)  Indeed, the jury also heard plaintiff testify that he may have left the store to go outside on the date of his arrest. (Trial Tr., at 392:12-15.)[1]   All of the evidence, taken together supports the jury's verdict for Officer Hugasian, irrespective of the officer's testimony. (Trial Tr., at 557:22-558:10.)  This evidence likewise supports the jury's finding that Officer Hugasian reasonably believed, even if mistaken, that he witnessed plaintiff engage in a drug sale on October 24, 2014. (Trial Tr., at 559:13-16.)

It is also important to note that the evidence that plaintiff believes was erroneously excluded has nothing to do with plaintiff's arrest.  Instead, in plaintiff's view, it tends to support his theory that his arrest was motivated by Officer Hugasian's pursuit of overtime pay.  Setting aside the fact that the evidence does not support that theory, the jury nevertheless heard exhaustive testimony from nearly all of the NYPD defendants and non-party witnesses about overtime. (See, e.g., Trial Tr., 106:22-117:5, 182:9-190:9, 209:24-210:17, 231:2-235:10, 282:4-293:21.) Even with all of that testimony, the jury rejected plaintiff's overtime theory, finding specifically that it was *not* a reason for plaintiff's arrest. (Trial Tr., at 561:9-11.)

---

[1] While plaintiff directly contradicted himself in answering the very next question (Trial Tr., at 392:16-18), the jury was entitled to credit plaintiff's testimony that he may have left the store in accordance with the Court's jury charge. (Trial Tr., at 528:14-17)("If you find that a witness has willfully testified falsely regarding an important matter, you may disregard the entire testimony or you may accept as much of the testimony as you find true and disregard what you find false.")

Accordingly, the jury's thoughtful verdict should stand, and plaintiff's motion for a new trial should be denied.

## CONCLUSION

For the foregoing reasons, defendants respectfully submit that plaintiff's motion for a new trial should be denied.

Dated:          New York, New York
                April 30, 2018

ZACHARY W. CARTER
Corporation Counsel of the
          City of New York
*Attorney for Defendants City of New York,*
*Hugo Hugasian, Christopher Moran, Peter*
*Rubin and John Essig*
100 Church Street
New York, New York 10007
(212) 356-2413 / 3527


By:              /s/
          _____

PHILIP R. DePAUL
BRIAN FRANCOLLA

Senior Counsel
Special Federal Litigation Division